Christopher Lee ROGERS, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent–Appellant.

No. 70974.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 17, 1997.

**476**

Klutho, Cody & Kilo, P.C., John P. Brown, & Corey M. Lavinsky, St. Louis, for respondent–appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Julia N. Hosmer, Sp. Asst. Atty. Gen., Mo. Dept. of Revenue, Jefferson City, for petitioner–respondent.

KAROHL, Judge.

This is an appeal by the director of revenue from a judgment restoring driving privileges for Christopher Lee Rogers (Rogers). The appeal follows a trial *de novo* after an administrative suspension of Rogers' driving privileges under § 302.500 *et. seq.* RSMo 1994. The sole issue in this case is whether there was evidence to suggest findings that there was probable cause to stop Rogers and that his blood alcohol content exceeded 0.10% by weight. We conclude the evidence was sufficient, therefore, we reverse.

On January 18, 1996, at approximately 1:39 a.m., Sergeant Lenhard of the City of Bridgeton Police Department responded to the scene of a three-car accident. He approached one of the drivers of the vehicles, Rogers, who indicated that he had been involved in the accident. Sergeant Lenhard had never previously talked to Rogers. Rogers said his vehicle had collided with an unlit motor vehicle that had stopped in the middle of the road. Sergeant Lenhard noticed Rogers was injured as a result of the accident. Rogers sustained a bump on the head. Sergeant Lenhard also observed that Rogers had slurred speech, dilated pupils, bloodshot eyes, a moderate smell of an intoxicating beverage on his breath, and "swayed" as he walked. Sergeant Lenhard told Rogers that he thought that Rogers was under the influence of alcohol. He asked Rogers to perform some field sobriety tests. Based on Rogers' performance of these tests, as well as the various conditions noted previously, Sergeant Lenhard arrested Rogers for driving while intoxicated, a violation of City of Bridgeton Ordinance 91–26.

Sergeant Lenhard first transported Rogers to the Bridgeton city jail, where the breath analysis machine was not working properly. Sergeant Lenhard then took Rogers to the St. Ann city jail, where he was permitted to use St. Ann's breath analysis machine. The printout of the test result was a blood alcohol content of 0.22% of weight. Sergeant Lenhard did not have his testing permit with him and failed to get the number from the Bridgeton police department, so he did not include the number or expiration date in his report.

Sergeant Lenhard had no personal knowledge as to whether the St. Ann machine was working properly or was in its proper radio frequency interference certified location. He had never used the St. Ann machine before. Sergeant Lenhard was given information however that stated the machine was functioning properly at the time of the test. A maintenance report on the machine had been prepared by a St. Ann police officer within a thirty-five day period prior to Rogers' test. The test confirmed the machine was in good order. The report was admitted into evidence at the trial court without objection.

■ The director initially argues that there was sufficient proof of probable cause to arrest Rogers. Suspension or revocation of driving privileges, pursuant to § 302.505.1 RSMo 1994 requires a two-part showing by the director of revenue: (1) the driver was

arrested on probable cause that he or she was driving in violation of an alcohol-related offense, and (2) the driver had been driving at a time his blood alcohol content was at least 0.10% by weight. *Oughton v. Director of Revenue*, 916 S.W.2d 462, 464 (Mo.App. E.D.1996). These showings must be made by a preponderance of the evidence. *Id.* Our standard of review is provided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The decision of the trial court will be affirmed unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

■ Probable cause exists when circumstances and facts would warrant a person of reasonable caution to believe that an offense has been committed. *Oughton*, 916 S.W.2d at 464. The determination of whether a police officer has probable cause to make an arrest must be made in relation to circumstances as they appeared to a prudent, cautious, and trained police officer. *Id.* "The type of facts needed to determine probable cause are found in the definition of the substantive offense and in case law dealing with the sufficiency of the evidence to convict of the substantive offense." *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 242 (Mo.App. W.D.1992). "To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it." *Wilcox*, 842 S.W.2d at 243. Circumstantial evidence may be relied upon when driving is not actually observed. *Id.* Nor is it necessary for an officer to actually observe a person driving in order to have probable cause to arrest for driving while intoxicated. *Chinnery v. Director of Revenue*, 885 S.W.2d 50, 51 (Mo.App. W.D.1994).

■ Sergeant Lenhard observed Rogers after Rogers had struck a parked vehicle. He saw Rogers as having several different signs of intoxication, including; slurred speech, dilated pupils, bloodshot eyes, a moderate smell of an intoxicating beverage on his breath, as well as a sway to his walk. Sergeant Lenhard requested field sobriety tests, which Rogers completed to varying degrees of success. In *Diehl v. Director of Revenue*,

836 S.W.2d 94, 95 (Mo.App. E.D.1992), the fact that the driver's eyes were bloodshot and watery, his speech slurred, and he had a strong odor of alcohol on his breath established probable cause. In *Thurman v. Director of Revenue*, 745 S.W.2d 260, 262 (Mo. App.1988), an officer was found to have sufficient probable cause to effectuate the arrest when the officer noticed that "driver's eyes were bloodshot and his speech slurred." The evidence here was at least as supportive and the requirement for proof of probable cause was satisfied.

■ The director also contends the blood alcohol test results are valid and probative since Sergeant Lenhard "substantially complied" with the Department of Health Regulations. Rogers responds that full compliance is the threshold standard. For the director to establish a *prima facie* foundation for admission into evidence of a breathalyser test, the director must demonstrate that the testing methods set out in § 577.020 RSMo 1994 were followed, in that the test was performed "(1) according to the techniques and methods approved by the division of health, (2) by persons possessing a valid permit, and (3) using equipment and devises approved by the division." *Shine v. Director of Revenue*, 807 S.W.2d 160, 162 (Mo.App. 1991). The third requirement mandates the breathalyser machine have maintenance checks done on it at intervals not to exceed thirty-five days. The regulations regarding the maintenance checks dictate that compliance is mandatory. *Turcotte v. Director of Revenue*, 829 S.W.2d 494, 495 (Mo.App.1992). We need not accept the "substantial compliance" argument. There was evidence, admitted without objection and unopposed, of full compliance.

■ Rogers argues the test results were not admissible into evidence since the printout of the test results did not have Lenhard's permit number on it. There was evidence the officer was a holder of a current, valid permit. In fact, the existence of a valid permit was not a contested fact. Rogers' "only interest is that the breathalyser not be inaccurate;" for the machine's accuracy is the main concern. *Id.* The inability of the officer to include his permit number with the test results is irrelevant to the question of whether the machine functioned properly or not,

absent evidence the officer did not have a current permit. Sergeant Lenhard testified that he held a Type III permit from the Missouri Department of Health and that the permit allowed him to operate the machine he used to test Rogers. That machine was tested for accuracy within thirty-five days prior to Rogers' test.

To void the suspension based on a procedural irregularity would be "to put literal procedural requirements above the legislative purpose of this law, to remove dangerous drunk drivers from Missouri roadways." *Shine*, 807 S.W.2d at 163. "The legislative intent behind the testing regulation is to allow the Department of Health to verify compliance with its regulation, and not to accord procedural protection to drunk drivers." *Turcotte*, 829 S.W.2d at 496. The deficiencies in the police report were satisfied by testimony that the testing officer had a valid permit and the test equipment was reliable. Accordingly, there was uncontested evidence to support a finding of both elements necessary under § 302.505.1 RSMo 1994. The trial court's judgment is against the weight of the evidence and erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d at 32.

We reverse.

RHODES RUSSELL, P.J. and SIMON, J., concur.