Jason P. SELIX, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. 74171.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 26, 1999.

Joy D. McMillen, Doster, Robinson, James, Hutchison & Ullom, P.C., Chesterfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Bucheim, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Director of Revenue ("Director"), appeals the judgment of the Circuit Court of St. Louis County reinstating the driving privileges of respondent, Jason Selix ("driver"), after a trial de novo pursuant to RSMo section 302.535 (Cum.Supp.1997). We reverse and remand.

On September 13, 1997, at about 2:46 a.m., Officer Tom Walker for the City of Town and Country in St. Louis County, observed driver's car drifting within its lane on westbound Highway 40. Walker followed the car and saw driver move into the right lane without signaling. Driver then exited onto southbound Highway 141, making a wide right-hand turn going to the left side of the lane, then jerking the car back into the middle of the lane. On Highway 141, Walker saw driver cross over the solid white line of the shoulder two or three times. Walker then pulled driver over. When talking with driver, Walker smelled a moderate odor of alcoholic beverage on his breath. Driver's eyes were bloodshot and glassy. When driver exited his car, he swayed. Walker gave driver three field sobriety tests, which he failed. Walker then arrested driver for driving while intoxicated and transported him to the police department for a breathalyzer test. Driver consented to the breath test which showed driver had a blood alcohol concentration ("BAC") level of .116%. Director suspended driver's driving privileges.

After the suspension, driver requested an administrative hearing, where the suspension was upheld. Driver then filed for a trial de novo with the circuit court. The trial de novo was held by a commissioner on February 23, 1998.

At the trial, Officer Walker testified about driver's arrest and the breathalyzer testing procedure. Director also offered Exhibits A (the ordinance), B (the checklist and test results) and C (the maintenance report and attachments). Exhibit C was offered as a business record of the Town and Country Police Department, certified by the affidavit of Michael Defoe, the custodian of records for Town and Country Police Department. Exhibit C included the Datamaster Maintenance Report for Datamaster # 950076 with its attached printouts, the certificate of analysis for Lot # 96004 simulator solution from RepCo Marketing Inc., and the Type II permit from Defoe, who maintained the machines. Driver offered no evidence.

At the trial, the commissioner refused to admit Exhibits B and C, finding the certificate of analysis did not conform to the Department of Health regulation, 19 CSR 25–30.051(1). The court noted that the regulation required the certificate to say the solution had .1210 g/dl + 3% (wt./vol.). The commissioner issued her findings and recommendations, finding that driver did not have a BAC of .10% or more by weight. The commissioner stated, "Petitioner's objection to certificate of analysis is sustained as not in accordance w/ 19 CSR 25–30.051." The trial court adopted the commissioner's findings as the court's judgment. Director appeals.

■ The court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). To uphold the suspension of driver's driving privileges, Director had the burden of proving by a preponderance of the evidence that the arresting officer had probable cause to arrest driver for driving in violation of an alcohol-related offense and further, that driver was driving when his BAC was .10% or more by weight. *Rogers v. Director of Revenue*, 947 S.W.2d

475, 476–77 (Mo.App. E.D.1997). When Director makes a prima facie showing of its burden, then the burden shifts to driver to prove by a preponderance of the evidence that his BAC was not .10% or more at the time he was driving. *Green v. Director of Revenue*, 961 S.W.2d 936, 938 (Mo.App. E.D. 1998).

In her points, Director argues the trial court erred in finding driver did not have a BAC of at least .10% because she laid a proper foundation for the admission of the breath test results. Further, Director asserts the certificate of analysis and maintenance report were admissible because the certificate conformed with 19 CSR 25–30.051. Because the breath test results were admissible, Director contends the decision to reinstate driver's driving privileges is against the weight of the evidence.

■ To lay a proper foundation for the admission of the breath test results, Director had to demonstrate the breath test was performed: (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department. *Rogers*, 947 S.W.2d at 477. At issue in this case is whether the certificate of analysis conforms with the approved methods and techniques of the Department of Health, as set forth in 19 CSR 25–30.051.

■ At the time of driver's trial, 19 CSR 25–30.051 (effective September 1, 1997 and expired February 27, 1998) applied for the standard simulator solutions to be used in verifying and calibrating breathalyzers. At that time, the regulation provided in pertinent part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl + 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% + 3% when heated to 34° + 0.2° Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aqueous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

At trial, the court indicated it believed the certificate of analysis did not comply with subsection (1) because it did not certify the solution was "an ethanol, in aqueous solution, concentration of 0.1210 g/dl + 3% (wt./vol.)." Director maintains that the certificate of analysis, which indicated the solution was found to contain "*0.1215* gms/dl wt./vol. ethyl alcohol" and that alcohol and distilled water were used in the solution, meets the requirements. We find that .1215 gms/dl wt./vol. is within three percent of .1210 g/dl wt./vol., and further, ethyl alcohol and ethanol are simply the same terms for alcohol. *See, Random House Webster's College Dictionary* 448–49 (2nd ed.1997) (both terms are defined as alcohol). In addition, the certificate of analysis indicates the alcohol was in distilled water, which is an aqueous solution. Therefore, the certificate of analysis contains sufficient language to meet this requirement of subsection (1). We find no merit in driver's contention that the certificate of analysis must parrot the exact language contained in the regulation to be valid. There is substantive compliance with the procedural requirements of the regulation. *See Shine v. Director of Revenue*, 807 S.W.2d 160, 162–63 (Mo.App. E.D.1991).

■ Driver proffers that the omission of an affirmative statement in the certificate of analysis identifying the supplier of the simulator solution makes the certificate fatally defective under subsections (1) and (3). Driver relies upon two recent cases from this Court: *Dent v. Director of Revenue*, 977 S.W.2d 281 (Mo.App. E.D.1998) and *McDonough v. Director of Revenue*, 977 S.W.2d 278 (Mo.App. E.D.1998). In those cases, we found that Director failed to establish the necessary foundation for admission of breathalyzer results where there was no evidence of the manufacturer of the solution as required by 19 CSR 25–30.050(4). *Dent*, 977 S.W.2d at 283; *McDonough*, 977 S.W.2d at 280. That regulation was repealed and replaced by 19 CSR 25–30.051, which requires the standard simulator solutions be certified by the supplier. Driver now argues that under the rationale of these cases, the certificate of analysis in question here fails to identify the supplier. We disagree.

Although the same reasoning used in *Dent* and *McDonough* applies in the case at hand, they are distinguishable. In those cases, the certificate of analysis did contain the name of Repco Marketing, Inc. ("RepCo"), but there was no evidence in the record, such as testimony, to establish RepCo was the manufacturer. *Compare Butts v. Director of Revenue*, 980 S.W.2d 187 (Mo.App. E.D.1998). Here, there is evidence to show that RepCo is the manufacturer of the solution. At the top of the certificate of analysis the name "RepCo Marketing Inc." is written out. The certificate is signed by Cecil B. Garner, President of RepCo, and refers to a sampling of Lot Number 96004 of the simulator solution. In the maintenance report, the officer noted "Solution Manufact. RepCo Mark. Lot # 96004 Bottle # 1146 Exp. 02–18–98," clearly indicating that RepCo is the manufacturer. However, as indicated above, the regulation now requires that the standard simulator solution be certified by the supplier. Even so, a reasonable inference can be made that if RepCo manufactured the solution, then it supplied the solution to the police department. Therefore, the evidence established that the certificate of analysis conforms with the regulations.

**384**

Finally, driver contends the certificate of analysis was inadmissible hearsay. The certificate of analysis was attached to the maintenance report and offered as a business record of the Town and Country Police Department. The custodian of records for the Town and Country Police Department, Michael Defoe, prepared an affidavit which conforms substantially with the form and content of the exemplar in RSMo section 490.692.3 (1994). As a consequence, the records were properly certified as business records and were admissible as an exception to the hearsay rule. RSMo sections 490.680 and 490.692 (1994); *Vilcek v. Director of Revenue,* 974 S.W.2d 602, 604–05 (Mo.App. E.D.1998). Driver's contention has no merit.

In conclusion, we find Director did lay the proper foundation for the admission of the breath test results which showed driver had a BAC of .116% and the court erred in finding otherwise. With the admission of the breath test results, the trial court's decision to reinstate driver's driving privileges is against the weight of the evidence because Director established its prima facie case and driver offered no rebuttal. Accordingly, we reverse the trial court's judgment and remand for the trial court to enter judgment sustaining the order of the Director suspending driver's driving privileges.

HOFF, P.J., and RHODES RUSSELL, J., concur.