**Richard A. MEURER, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. 74357.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 2, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Timothy F. Devereux, Clayton, for respondent.

TEITELMAN, Judge.

The Director of Revenue (Director) appeals the circuit court's judgment setting aside the Director's suspension of Richard Meurer's (Meurer) driving privileges. We reverse and remand.

Meurer filed a petition for a trial de novo with the circuit court pursuant to Section 302.535 RSMo Cum.Supp.1997, after Director suspended his driving privileges following his arrest for driving while intoxicated. The trial de novo was held by commissioner on April 6, 1997. At trial, the parties stipulated to the following: (1) the arresting officer, Officer Michael Defoe, had probable cause to arrest Meurer on October 1, 1997 for driving while intoxicated pursuant to a Town & Country city ordinance; (2) Defoe, who also tested Meurer's blood alcohol content (BAC) following his arrest, had a valid permit to administer and do breathalyzer maintenance tests on October 1, 1997; (3) Defoe informed Meurer of the Implied Consent provisions and completed all the steps on the Alcohol Influence Report checklist; and (4) Defoe used a .100 simulator solution.

Following the stipulation, Director chose to submit the rest of her case on the following records: Exhibit A, the ordinance; Exhibit B, the Alcohol Influence Report, the breath test checklist, Defoe's Type III permit and test results; and Exhibit C, the maintenance report with attachments and Defoe's Type II permit. Exhibit C was offered as a business record of the Town and Country Police Department, certified by the affidavit of Defoe, who also served as the custodian of records for Town and Country. Exhibit C included the Datamaster Maintenance Report for Datamaster # 950076 with its attached printouts, the certificate of analysis for Lot # 96004 simulator solution from RepCo Marketing Inc., and Defoe's Type II permit. Defoe not only arrested Meurer and gave him a breath test, but he also maintained the breathalyzer machines at his police department. Meurer offered no evidence.

Following Meurer's objection, the commissioner refused to admit Exhibit C, finding the certificate of analysis did not conform to the Department of Health regulation, 19 CSR 25–30.051(1). As a result, the commissioner also rejected the checklist, printout and breath test results contained in Exhibit B. The commissioner then issued her findings and recommendations, finding that Meurer did not have a BAC of .10 percent or more and reinstating Meurer's driving privileges. The trial court adopted the commissioner's findings as the court's judgment. Director appeals.

The court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To uphold the suspension of Meurer's driving privileges, Director had the burden of proving by a preponderance of the evidence that the arresting officer had probable cause to arrest him for driving while intoxicated and further that his BAC was .10 percent or more by weight. *Collins v. Director of Revenue*, 691 S.W.2d 246, 252 (Mo. banc 1985). When the Director makes a prima facie showing of her case, then the burden shifts to the driver to rebut it by a preponderance of the evidence. *Green v. Director of Revenue*, 961 S.W.2d 936, 938 (Mo.App. E.D.1998).

In her points on appeal, Director argues the certificate of analysis does conform with 19 CSR 25–30.051 and that she laid a proper foundation for the admission of the breath test results.[1] Therefore, because the breath test results were admissible, Director con-

---

1. Initially, we note Meurer claims Director failed to preserve this point for appeal. However, the

tends the decision to reinstate Meurer's driving privileges is against the weight of the evidence.[2]

■ To lay a proper foundation for the admission of the breath test results, Director had to demonstrate the breath test was performed: (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health. *Spies v. Director of Revenue*, 854 S.W.2d 66, 68 (Mo.App. E.D.1993). These foundational requirements are found in the Code of State Regulations in 19 CSR 25–30. The only foundational issue presented in this case is whether the test was performed by following the approved methods and techniques of the Department of Health.

At the time of Meurer's trial, the requirements for standard simulator solutions to be used in verifying and calibrating breathalyzers were found in 19 CSR 25–30.051 (effective as an emergency rule on Sept. 1, 1997). At that time, the regulation provided in pertinent part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl + 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% + 3% when heated to 34° + 0.2° Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aque-

ous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

■ At trial, Meurer specifically objected to the certificate of analysis because he claimed it did not comply with subsection (1) of 19 CSR 25–30.051 by certifying the solution was "an ethanol, in aqueous solution, concentration of 0.1210 g/dl + 3% (wt./vol.)." Director maintains that the certificate meets the requirements where it states the solution was found to contain "*0.1215* gms/dl wt./vol. ethyl alcohol" and that alcohol and distilled water were used in the solution. We find that .1215 g/dl wt./vol is within three percent of .1210 g/dl, and further that ethyl alcohol and ethanol are simply the same terms for alcohol. *See, Random House Webster's College Dictionary* 448–49 (2nd ed.1997) (both terms are defined as alcohol).

■ In addition, the certificate indicates the alcohol was in distilled water, which is an aqueous solution. Therefore, the certificate of analysis contains sufficient language to meet this requirement of subsection (1). It is unnecessary for the certificate of analysis

---

record clearly shows that Director did argue the certificate of analysis was in "full" compliance with 19 CSR 25–30.051.

**2.** The issues raised by Director and Meurer in this appeal are virtually identical to those raised in a case recently handed down by this Court in

*Selix v. Director of Revenue*, 985 S.W.2d 380 (Mo.App. E.D., 1999). We also note the identical certificate of analysis was in issue in *Selix.* As a consequence, where necessary, we have adopted portions of the reasoning expounded in that opinion.

to use precisely the identical language used in the regulation, so long as there is substantive compliance with the procedural requirements. *See, Rogers v. Director of Revenue,* 947 S.W.2d 475, 477–78 (Mo.App. E.D.1997); *Shine v. Director of Revenue,* 807 S.W.2d 160, 163 (Mo.App. E.D.1991).

In his responsive brief, Meurer also sets forth other alleged failures on the part of Director in laying a proper foundation. First, Meurer contends the certificate of analysis fails to identify the supplier of the simulator solution as required under subsections (1) and (3) of 19 CSR 25–30.051. Meurer relies upon two recent cases from this Court: *Dent v. Director of Revenue,* 977 S.W.2d 281 (Mo.App. E.D.1998) and *McDonough v. Director of Revenue,* 977 S.W.2d 278 (Mo.App. E.D.1998). In those cases, we found that Director failed to establish the necessary foundation for admission of breathalyzer results where there was no evidence of the manufacturer of the solution as required by 19 CSR 25–30.050(4). *Dent,* 977 S.W.2d at 283; *McDonough,* 977 S.W.2d at 280. That regulation was repealed and replaced by 19 CSR 25–30.051, which requires the simulator solutions be certified by the supplier. Meurer now argues that under the rationale of these cases, the certificate of analysis in question here fails to identify the supplier.

■ We disagree. Although the same reasoning used in *Dent* and *McDonough* applies in the case at hand, they are distinguishable. In those cases, although the certificate did contain the name of Repco Marketing, Inc., there was no evidence in the record, such as testimony, to establish that RepCo was the manufacturer. *Compare, Butts v. Director of Revenue,* 980 S.W.2d 187 (Mo.App. E.D., 1998). Here, there is evidence to show that RepCo is the manufacturer of the solution. At the top of the certificate of analysis the name "RepCo Marketing Inc." is written out. The certifi-

cate is signed by Cecil B. Garner, President of RepCo, and refers to a sampling of Lot # 96004 of the simulator solution. In the maintenance report, the officer noted "Solution Manufact. RepCo Mark. Lot # 96004 Bottle # 1146 Exp. 02–18–98," clearly indicating that RepCo is the manufacturer. However, as indicated above, the regulation now requires that the solution be certified by the supplier. Even so, a reasonable inference can be made that if RepCo manufactured the solution, then it supplied the solution to the police department. Therefore, the Director established her prima facie burden of showing the certificate of analysis conformed with the regulations.[3]

■ Finally, Meurer argues the certificate of analysis was inadmissible hearsay. The certificate of analysis was attached to the maintenance report and offered as a business record of the Town and Country police department. The custodian of records for the Town and Country police department, Michael Defoe, prepared an affidavit which conforms substantially with the form and content of the exemplar in section 490.692.3 RSMo 1994. As a consequence, the records were properly certified as business records and were admissible as an exception to the hearsay rule. Section 490.680, 490.692, RSMo 1994; *Dent,* 977 S.W.2d at 282; *Vilcek v. Director of Revenue,* 974 S.W.2d 602, 604–05 (Mo.App. E.D.1998).

In response, Meurer notes the certificate of analysis here also includes the language "Corrected 1/20/97," which he argues is double hearsay because there is no evidence regarding who corrected the certificate. However, the fact the certificate was corrected does not render it inadmissible hearsay. The certificate was still offered as a properly certified business record and falls within an exception to the hearsay rule. Meurer's arguments are without merit.

■ In conclusion, we find the Director did lay the proper foundation for the admis-

---

3. Meurer also argues Director failed to show the solution produced a vapor alcohol value of .100% ± 3% as required by subsection (1). However, Meurer stipulated at trial that the officer used a .100% simulator solution. Moreover, the certificate of analysis shows that "When used in a calibrated simulator, operating at 34°C ±2°C, this solution will give an alcohol breath test instrument reading of .100 percent BAC ± 3%."

sion of the breath test results which showed Meurer had a BAC of .164 percent and the court erred in finding otherwise. Director thus established her prima facie case. In order to rebut Director's prima facie case, Meurer must establish by a preponderance of the evidence that the test results were inaccurate. However, Meurer offered no rebuttal. Therefore, the trial court's decision to reinstate Meurer's driving privileges is against the weight of the evidence. Accordingly, we reverse the trial court's judgment and remand for the trial court to enter judgment sustaining the order of the Director suspending Meurer's driving privileges.

Reversed and remanded.

JAMES R. DOWD and Judge LAWRENCE G. CRAHAN, concur.