Michael D. ADKINS, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. 74142.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 9, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Stanley M. Brandmeyer, Timothy F. Devereux, Clayton, for respondent.

LAWRENCE E. MOONEY, Judge.

The Director of Revenue (Director) appeals the circuit court's judgment reinstating the driving privileges of Michael Adkins (Adkins) after the Director had suspended them pursuant to section 302.505, RSMo Cum. Supp.1997, following Adkins's arrest for driving while intoxicated. We affirm.

On September 30, 1997, at about 10:52 a.m., Officer Gary Gunn of the Chesterfield Police Department, noticed a vehicle directly in front of him veering into the oncoming traffic lane. The vehicle then sharply corrected to the right and drove on the shoulder of the road for several hundred feet, before again veering into the oncoming traffic lane. Gunn activated his emergency lights and the vehicle stopped. The driver of the vehicle was Adkins. When Gunn approached Adkins, he detected a strong odor of alcohol on his breath. When speaking, Adkins seemed slightly confused and his speech was slurred. Gunn asked Adkins to perform three field sobriety tests. Based on his poor performance on these tests, Gunn believed Adkins was impaired by alcohol and arrested him for driving while intoxicated. Gunn transported Adkins to the police station for a breathalyzer test, to which Adkins consented. The breathalyzer machine showed a reading of .185 percent. Director suspended Adkins's driving privileges.

At Adkins's request, an administrative hearing was held, where his suspension was upheld. Adkins then filed a petition for trial de novo pursuant to section 302.535, RSMo

Cum.Supp.1997. A commissioner held the trial de novo on February 18, 1998.

At the trial de novo, Officer Gunn testified about Adkins's arrest and the breathalyzer test. Director also offered Exhibit A (the ordinance), Exhibit B (the breath test checklist and test results), Exhibit C (the printout of the test results) and Exhibit D (the maintenance report and attachments). Exhibit D included the CMI Intoxilyzer 5000 Maintenance Report for Intoxilyzer # 66–003637, dated September 21, 1997, with its attached printouts and the certificate of analysis from Guth Laboratories, Inc. for Lot # 97060 of simulator solution.

In addition, Officer James Sharp of the Chesterfield police testified that he prepared the maintenance report contained in Exhibit D and attached a copy of the certificate of analysis from Guth Laboratories, Inc. Sharp stated that the department purchased the simulator solution used in his calibration test from Guth Laboratories, the manufacturer of the solution. Guth Laboratories shipped the solution to the department and the certificate of analysis arrived in the box with the simulator solution.

When Exhibits B, C, and D were offered into evidence, Adkins objected that the maintenance report contained hearsay and that it did not comply with Department of Health regulation, 19 CSR 25–30.051. The commissioner sustained objections to the admission of Exhibits B, C and D, refusing to admit them. The commissioner issued findings and recommendations, finding that while the officer did have probable cause to arrest Adkins for driving while intoxicated, Adkins did not have a blood alcohol concentration of .10 percent or more. The commissioner ordered Director to reinstate his driving privileges. The circuit court adopted the commissioner's recommendations as the court's judgment. Director appeals.

We must affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

In her points on appeal, Director contends the trial court erred in finding Adkins did not have a BAC of at least .10 percent or more and in refusing to admit Exhibits B, C and D. The Director argues that these exhibits, including the breath test results, were admissible because she laid a proper foundation and the maintenance report conformed with Department of Health regulation 19 CSR 25–30.051. Further, the Director argues that because the exhibits were admissible, the court's decision to reinstate the driving privileges of Adkins is against the weight of the evidence.

■ At the trial de novo, Director had the burden of proving by a preponderance of the evidence that the arresting officer had probable cause to arrest Adkins for driving while intoxicated and further, that Adkins's BAC was .10 percent or more. *Oughton v. Director of Revenue*, 916 S.W.2d 462, 464 (Mo.App. E.D.1996) When the Director has made a prima facie showing, then the burden shifts to the driver to rebut it by a preponderance of the evidence. *Green v. Director of Revenue*, 961 S.W.2d 936, 938 (Mo.App. E.D.1998). To lay a proper foundation for the admission of the breathalyzer test results, Director must demonstrate the test was performed: (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo.App. E.D.1997).

Department of Health regulations require that maintenance checks be performed on breathalyzers every 35 days and the appropriate maintenance report prepared. 19 CSR 25–30.031(3) & (7). In calibrating and verifying breathalyzers during those maintenance checks, the officer is required to use standard simulator solutions. At the time of Adkins's arrest and trial, the Department of Health had promulgated an emergency regulation, 19 CSR 25–30.051 (effective date: 9–1–97), delineating the guidelines for standard simulator solutions to be used in verifying and calibrating all breathalyzers. This regulation provides, in pertinent part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers

at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl + 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% + 3% when heated to 34° + 0.2° Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aqueous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26,1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

■ The trial court refused the exhibits without explanation. At trial, Adkins made the objection that the simulator solution used to maintain the machine should be certified to contain an ethanol concentration of .1210 g/dl ± 3% (wt./vol.) as outlined in subsection (1) of 19 CSR 25–30.051. However, this objection has no merit. The certificate of analysis in question certifies the solution was found to contain "0.1215 percent (w/vol) ethyl alcohol." Clearly, .1215 is within three percent of .1210 g/dl, as required by the regulation (the ranges are .1174 to .1246). It is unnecessary for the certificate of analysis to use the identical language used in the regulation, so long as there is substantive compliance with the procedural requirements. *See, Rogers,* 947 S.W.2d at 477–78; *Shine v. Director of Revenue,* 807 S.W.2d 160, 163 (Mo.App. E.D.

1991). Therefore, if the trial court relied upon this basis in its decision, then it erred. However, a bench-tried judgment that reaches a correct result will not be set aside even if the trial court relies upon the wrong or insufficient reasons for its judgment. *Dent v. Director of Revenue,* 977 S.W.2d 281, 282 (Mo.App. E.D.1998).

■ Adkins also argued at trial the certificate failed to contain a .100 vapor alcohol value as required by 19 CSR 25–30.051(1). We agree. Subsection (1) requires the standard simulator solution "*shall* produce a vapor alcohol value of 0.100% ± 3% when heated to 34° ± 0.2° Celsius in a simulator." (Emphasis added.) Here, the certificate of analysis from Guth Laboratories contains only following language: "When used in a calibrated Simulator, operating at 34°C ± .2° C, this solution will give an alcohol breath tester reading of 0.10 percent BAC." The certificate does not indicate the solution will produce a value of 0.100% ± 3% as required by the regulation, but instead certifies only to two digits, .10 percent. A review of the record also fails to provide any evidence that the solution used by the maintenance officer to calibrate the breathalyzer met the requirement set forth in the regulation. The maintenance officer testified he did not know the third digit after .10. Without knowing the "missing" third digit, there is no evidence the solution, when heated as required, will produce a vapor alcohol value of "0.100% ± 3%."

Director argues that the certificate of analysis need only comport with subsection (3) and does not have to include the language contained in subsection (1). However, we need not reach this issue. Director must show compliance with subsection (1) as a necessary foundation for admission of the contested exhibits. Whether compliance with subsection (1) must be demonstrated by the certificate of analysis or whether compliance may be shown by testimony or other documentary evidence we leave to another day. In the case at hand, Director failed to adduce evidence of compliance with subsection (1) through the certificate of analysis or otherwise.

As a consequence, Director failed to show the simulator solution used to calibrate the breathalyzer machine met the requirements of Department of Health regulation 19 CSR 25–30.051.[1] Therefore, Director failed to lay a proper foundation for the admission of the breath test results and the trial court did not err in excluding them. We deny Director's points and affirm the judgment.

SIMON, P.J., and CRANE, J., concur.

---

1. After the court's ruling excluding the Guth certificate of analysis, Director attempted to offer a different maintenance report and certificate of analysis as Exhibit E. The court refused this exhibit as well. Director does not challenge the court's ruling regarding that exhibit.