**Andrew Henry GUCCIONE, Jr., Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. 74438.**

Missouri Court of Appeals, Eastern District, Division One.

April 6, 1999.

stating Andrew H. Guccione's driving privileges that were suspended by the Director following Guccione's arrest for driving while intoxicated. We reverse and remand.

On September 28, 1997, a Missouri State Highway Patrol trooper stopped a vehicle driven by Guccione after the vehicle crossed the shoulder and center line several times. The trooper observed that Guccione's eyes were red and glassy. The trooper smelled alcohol on Guccione's breath. Guccione admitted drinking two beers. Guccione failed field sobriety tests conducted by the trooper. The trooper arrested Guccione for driving while intoxicated and took him to a county jail. Guccione consented to a breath test. The breath test administered by the trooper showed a blood alcohol content of .103%.

After an administrative hearing officer upheld the suspension of Guccione's driving privileges, he filed a petition for a trial de novo pursuant to section 302.535 RSMo. Cum.Supp.1997. At trial, the Director's evidence consisted of Missouri Highway Patrol and Department of Revenue records. The Director offered the two exhibits, with accompanying affidavits, as business records pursuant to section 490.692 RSMo.1994. The evidence included: (1) the Alcohol Influence Report prepared by the trooper; (2) the Blood Alcohol Test Report prepared by the trooper; (3) the Datamaster Maintenance Report dated September 8, 1997; and (4) the certificate of analysis for the simulator solution from RepCo Marketing Inc.[1]

The trial court found that the maintenance report did not comply with the requirements of 19 CSR 25-30.051(3) and (4), the certificate of analysis did not contain the information required under 19 CSR 25-30.051(1), the arresting officer's written statement in the Alcohol Influence Report as to the existence of a permit to operate the breathalyzer was inadmissible hearsay, and the certification portion of the Blood Alcohol Test Report was not complete in that the certification by the officer was not properly checked. Based on

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

Ronald R. Fralicx, Richard K. Zerr, St. Charles, for respondent.

Before JAMES A. PUDLOWSKI, P.J., WILLIAM H. CRANDALL, Jr., and CLIFFORD H. AHRENS, JJ.

PER CURIAM.

The Director of Revenue (Director) appeals from the trial court's judgment rein-

---

1. The only evidence offered by Guccione was an exhibit, not part of the record, described at trial as a collection of maintenance reports from the Department of Health including a report dated October 16, 1997 for the breathalyzer used for Guccione's test. The trial court sustained the Director's objection to admission of this exhibit.

these findings, the court concluded that the Director failed to meet the burden for admissibility of the breath test results and therefore the Director failed to show that Guccione's blood alcohol content was .10% or greater. The court reinstated Guccione's driving privileges. The Director appeals from this judgment.

■■■ The judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Reinhold v. Director of Revenue*, 961 S.W.2d 904, 905 (Mo.App. E.D. 1998). To establish a prima facie case at trial, the Director had the burden of showing by a preponderance of the evidence that (1) the arresting officer had probable cause to arrest the driver for driving while intoxicated, and (2) at the time of the arrest, the driver's blood alcohol content was .10% or greater. *Plank v. Director of Revenue*, 982 S.W.2d 811, 814 (Mo.App. E.D.1998). When the Director makes a prima facie case, the burden then shifts to the driver to rebut the prima facie case by a preponderance of the evidence. *Id.*

■ To establish a proper foundation for admission of a breathalyzer test, the Director must show that the test was performed: (1) according to techniques and methods approved by the Department of Health; (2) by a person possessing a valid permit; and (3) using equipment and devices approved by the Department of Health. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 477 (Mo.App. E.D. 1997).

■ The Director argues in the first point that the certificate of analysis and maintenance report are valid under 19 CSR 25–30.051. We agree. The regulation delineates the guidelines for standard simulator solutions to be used in verifying and calibrating breathalyzers.[2] This regulation provided, in pertinent part:

(1) Standard simulator solutions, used to verify and calibrate evidential breath ana-

lyzers at the 0.10% or 0.100% level, shall be certified by the suppliers of that solution to have an ethanol, in aqueous solution, concentration of 0.1210 g/dl ± 3% (wt./vol.). This solution shall produce a vapor alcohol value of 0.100% ± 3% when heated to 34 ± 0.2 Celsius in a simulator.

. . .

(3) The certificate shall include the name of the supplier, the lot or batch number of solution, the ethanol concentration in aqueous solution, and the expiration date. Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date. A photocopy of that certificate shall be attached to the maintenance report.

(4) Maintenance reports completed on or after March 26, 1996, and prior to the effective date of this rule shall be considered valid under this rule if a certificate of analysis was supplied with the simulator solution. Maintenance reports completed prior to March 26, 1996, shall be considered valid under this rule if done in compliance with the rules in effect at the time the maintenance report was conducted.

The Director contends that there is sufficient evidence that RepCo Marketing Inc. (RepCo) is the supplier of the simulator solution. Nineteen CSR 25–30.051 required certification by the **supplier** of the standard simulator solution. *Selix v. Director of Revenue*, 985 S.W.2d 380, 383 (Mo.App. E.D. 1999). Here, the certificate of analysis for the simulator solution from RepCo fails to identify it as the supplier of the solution. However, the trooper indicated on the maintenance report that RepCo manufactured the solution. A reasonable inference can be made that if RepCo manufactured the solution, then it supplied the solution. *Id.* at 383–84; *Meurer v. Director of Revenue*, 984 S.W.2d 873, 877 (Mo.App. E.D.1999). There-

---

**2.** We analyze the language of 19 CSR 25–30.051 effective at the time of Guccione's trial, April 14, 1998. *Vilcek v. Director of Revenue*, 974 S.W.2d 602, 604 (Mo.App. E.D.1998). The Department of Health, effective May 4, 1998, rescinded this regulation and filed a new regulation, still numbered 25–30.051, addressing standard simulator solutions.

fore, the Director established that the certificate complies with the regulation. *Id.*

■ The Director also contends that the maintenance report should not be "rejected" because the trooper failed to write the ethanol in vapor concentration on the report. Nineteen CSR 25–30.051(3) provided that "Evidence of that certification shall accompany the maintenance report in the form of writing on the maintenance report the supplier of the solution, the ethanol in vapor concentration, lot or batch number, and the expiration date." The officer completing the maintenance report listed RepCo as the manufacturer, the lot number, and expiration date but failed to provide the ethanol in vapor concentration. However, this information was provided in RepCo's certificate of analysis. We therefore find substantive compliance with the regulation. *See Cappiello v. Director of Revenue,* 895 S.W.2d 624, 626 (Mo.App. E.D.1995); *Shine v. Director of Revenue,* 807 S.W.2d 160, 162–63 (Mo.App. 1991).

■ The Director also contends that the certificate of analysis properly certifies that the simulator solution has "an ethanol, in aqueous solution, concentration of 0.1210 g/dl ± 3% (wt./vol.)" as required under 19 CSR 25–30.051(1). The certificate states that the simulator solution was "found to contain 0.1213 gms/dl wt./vol. ethyl alcohol," and that alcohol and distilled water were used in the solution. We find that .1213 gms/dl wt./vol. is within three percent of .1210 g/dl, and that ethyl alcohol and ethanol are simply the same terms for alcohol. *Meurer,* at 876; *Selix,* at 382–83. In addition, the certificate indicates the alcohol was in distilled water, which is an aqueous solution. *Id.* Therefore, the certificate contains sufficient language to satisfy the quoted requirements of subsection (1).

The trial court erred in finding that the maintenance report did not comply with the requirements of 19 CSR 25–30.051(3) and (4), and that the certificate of analysis did not

contain the information required by 19 CSR 25–30.051(1).

■ The Director argues in the second point that the trial court erred in its findings regarding the trooper's permit to operate the breathalyzer. The court found "that the report submitted by the Department of Revenue as Exhibit 'A' includes both hearsay which is admissible as an exception to the hearsay requirement under the Business Records Exemption and also hearsay of a secondary level which is not admissible. The not admissible hearsay includes the officer's attestation in writing as to the existence of a permit to operate a breath analyzer machine, said permit not being provided as an Exhibit to the officer's report."

■ The Director does not need to produce a copy of an officer's permit as evidence to establish an officer's qualifications. *Buschmann v. Director of Revenue,* 969 S.W.2d 766, 768 (Mo.App. E.D.1998); *Smith v. Director of Revenue,* 948 S.W.2d 219, 221 (Mo.App. E.D.1997). It is sufficient if the officer certifies on the Alcohol Influence Report checklist that he or she is authorized to operate the breathalyzer in use and possesses a valid permit by citing the permit number and expiration date. *Id.* Here, the trooper certified on the Alcohol Influence Report that he was authorized to use the breathalyzer. The trooper's permit number and expiration date is also on the report. This is sufficient to establish the trooper had a valid permit. In addition, the exhibit was properly offered as a business record. *Buschmann,* 969 S.W.2d at 768.

■ In the third point, the Director argues that the trial court erred in rejecting the breath test results based on the trooper's failure to properly check boxes on the certification portion of the Blood Alcohol Test Report. This report has a section titled "CERTIFICATION BY OPERATOR." In this section, there are four sentences setting forth certain conditions with boxes to be checked by each sentence.[3] The trooper failed to check the four boxes.

---

3. The four sentences are: (1) "There was no deviation from the procedure approved by the department;" (2) "To the best of my knowledge the instrument was functioning properly;" (3) "I am authorized to operate the instrument;" and (4) "No radio transmission occurred inside the room where and when this was being conducted."

This court has considered a case where an officer failed to check the appropriate boxes on a Blood Alcohol Test Report. *Shine*, 807 S.W.2d at 161. In that case, the officer testified that there was compliance with the conditions as set forth by the four sentences. *Id.* The trial court reinstated Shine's driving privileges, finding that there was not compliance with 19 CSR 20–30.011(5)(A).[4] *Id.* at 162. On appeal, the Director argued that the officer's testimony established compliance with the certification section and that there was "substantive compliance" with the certification process. *Id.* at 162–63. This court agreed with the Director's argument and reversed the trial court's judgement. *Id.* at 163.

Here, the Alcohol Influence Report has a section titled "CERTIFICATION OF EXAMINATION BY OPERATOR." This section first provides as follows: "AS SET FORTH IN THE RULES PROMULGATED BY THE DEPARTMENT OF HEALTH RELATED TO THE DETERMINATION OF BLOOD ALCOHOL BY BREATH ANALYSIS, I CERTIFY BY COMPLETING THAT." The four sentences as those at issue in the Blood Alcohol Test Report are then listed. The trooper's name, permit number and other information is then written in the appropriate spaces. By completing this information, the trooper certified to the conditions set forth in the four sentences. As in *Shine*, we find this constitutes sufficient evidence of compliance with the regulation.

The Director argues in the final point that the arresting officer had probable cause to arrest Guccione.[5] We agree. Probable cause exists when circumstances and facts would warrant a person of reasonable caution to believe an offense has been committed. *Rogers*, 947 S.W.2d at 477. The determination of whether a police officer has probable cause to arrest "must be made in relation to circumstances as they appeared to

a prudent, cautious, and trained police officer." *Id.*

The trooper's written statement regarding the arrest is contained in the Alcohol Influence Report. After stopping Guccione because his vehicle crossed the shoulder and center line several times, the trooper observed that Guccione's eyes were red and glassy. The trooper smelled alcohol on Guccione's breath. Guccione failed field sobriety tests conducted by the trooper. For the portion of the Director's prima facie case regarding probable cause, the evidence recited is sufficient to establish that the trooper had probable cause to arrest Guccione for driving while intoxicated. *Haas v. Director of Revenue*, 975 S.W.2d 483, 484 (Mo.App. E.D.1998); *Rogers*, 947 S.W.2d at 477.

The Director established a prima facie case. Guccione failed in his burden of rebutting the Director's prima facie case.

The judgment is reversed and the cause remanded with directions for the trial court to enter judgment reinstating the Director's suspension of Guccione's driving privileges.

---

**4.** Nineteen CSR 20–30.011(5)(A) provided: "Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 20–30.060.(A) An operational checklist, including the certification section shall be completed with each breath test at the time of the test, by the individual performing the test." These provisions are now found in 19 CSR 25–30.011(5)(A).

**5.** The trial court made no findings regarding probable cause.