**Randy Robert SCHULTE, Respondent,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Appellant.**

**No. WD 56012.**

Missouri Court of Appeals, Western District.

June 22, 1999.

Rehearing Denied July 27, 1999.

Evan J. Buchheim, Assistant Attorney General, Jefferson City, for appellant.

Kenneth M. Hayden, Versailles, for respondent.

Before PATRICIA BRECKENRIDGE, Presiding Judge, FOREST W. HANNA, Judge and JOSEPH M. ELLIS, Judge.

PER CURIAM.

On October 6, 1997, after noticing that Randy Robert Schulte's Chevy truck had no taillights, a Missouri State Highway Patrol trooper followed his vehicle. While following his pickup truck, the trooper observed Schulte weaving in his lane. After Schulte's truck touched the centerline, the trooper stopped him. The trooper observed that Schulte's eyes were glassy and his speech was slurred, mumbling, and stuttering. The trooper also detected a moderate odor of intoxicants coming from the truck's cab. As a result, the trooper ordered Schulte to sit in his patrol car. Once he was seated in the patrol car, the trooper noticed a moderate odor of intoxicants on Schulte's breath. Schulte admitted drinking three and one half beers since he had finished work.

After noticing that Schulte was swaying, the trooper administered field sobriety tests. Schulte was able to count from 42 to 63 and backwards from 63 to 42, but failed the horizontal gaze nystagmus test. A portable breath test indicated that Schulte's blood alcohol level was well above 0.10%. The trooper asked Schulte to perform a walk-and-turn. Schulte had trouble following the trooper's directions and swayed while attempting to remain

balanced. Before starting the test, Schulte told the trooper, "Sir, just take me to jail," and put his hands out in front of him. At that point, Schulte was placed under arrest for driving while intoxicated. Schulte was taken to the Morgan County jail, where he consented to a breath analysis test and being read his rights under the Missouri Implied Consent Law. The breath test indicated a blood alcohol content of 0.20%.

After an administrative hearing officer upheld the suspension of Schulte's driving privileges, he filed a petition for a trial *de novo* pursuant to § 302.535, RSMo. Cum. Supp.1997. At trial, the Director of Revenue (hereinafter "Director") offered records of the Department of Revenue detailing Schulte's arrest and breath test results and records of the Department of Health, which included the maintenance report and certificate of analysis for the breath analyzer used in Schulte's test as business records pursuant to § 490.692.[1] The trial court refused to admit the records into evidence for failing to comply with the requirements of 19 CSR 25–30.051. The trial court found the manufacturer's certificate of analysis for the simulator solution used to calibrate the breath analyzer machine to be inadmissible because the Director failed to lay a proper foundation for its admission under the business records exception to the hearsay rule. Based on these findings, the court concluded that the Director failed to meet the burden of admissibility of the breath test results. As a consequence, the Director was unable to demonstrate that Schulte's blood alcohol level exceeded 0.10%. The trial court sustained Schulte's motion for a directed verdict and reinstated his driving privileges and purged the administrative alcohol suspension from his driving record. The director appeals from this judgment.

The Director raises two points on appeal. First, the Director alleges that the trial court erred by refusing to admit the maintenance report and certificate of analysis for the breath analyzer, which were

valid under 19 CSR 25–30.051. Second, the Director contends that the trial court's judgment sustaining Schulte's motion for a directed verdict and setting aside the suspension of his driving privileges was against the weight of the evidence.

■ Unless it is not supported by substantial evidence, against the weight of evidence, an erroneous declaration of the law, or an erroneous application of the law, we will affirm the judgment of the trial court in a court-tried case. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). To establish a prima facie case at a trial *de novo*, the Director bears the burden of proving by a preponderance of the evidence that (1) probable cause existed for the officer to arrest the driver for driving while intoxicated, and (2) that the driver's blood alcohol level was 0.10% or greater. *Plank v. Director of Revenue*, 982 S.W.2d 811, 814 (Mo.App. E.D.1998). After the Director has made a prima facie showing, the burden shifts to the driver to rebut the prima facie case by a preponderance of the evidence. *Id.* Here, Schulte does not dispute that the arresting officer had probable cause to arrest him. Therefore, the Director is left with establishing by a preponderance of the evidence that Schulte's blood alcohol level was at least 0.10%.

■ The Director attempted to admit a maintenance report for the breath analyzer machine and the manufacturer's certificate of analysis for the simulator solution used to calibrate the machine. The Director must satisfy three requirements to establish a foundation to admit the breath analyzer test results. *Threlkeld v. Director of Revenue*, 977 S.W.2d 295, 296 (Mo.App. W.D.1998). The Director must show that the test was performed (1) according to the approved methods and techniques of the Department of Health, (2) by an operator holding a valid permit, and (3) with equipment and devices approved by the Department of Health. *Id.*

■ In the first point, the Director argues that the certificate of analysis and the

1. All statutory references are to RSMo 1994, unless otherwise noted.

maintenance reports are valid under 19 CSR 25–30.051. The regulation provides:

(1) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.10% or 0.100% level, shall be solutions from approved suppliers.

(2) Standard simulator solutions, used to verify and calibrate evidential breath analyzers at the 0.04% or 0.040% level, shall be solutions from approved suppliers.

(3) Approved suppliers of standard simulator solutions are:

(A) Alcohol Countermeasure Systems, Inc.

Aurora, CO 80010

(B) Guth Laboratories, Inc.

Harrisburg, PA 17111–4511

(C) RepCo Marketing, Inc.

Raleigh, NC 27604

(4) Maintenance reports using Intoximeter standard simulator solution completed prior to the effective date of this rule shall be considered valid under this rule if the maintenance report was completed in compliance with the rules in effect at the time the maintenance was conducted.

■ The Director claims that the maintenance report stating that the solution used was manufactured by RepCo Marketing and the certificate of analysis attached to the report was sufficient to make a prima facie showing. "Here, there is evidence to show that RepCo is the manufacturer of the solution. At the top of the certificate of analysis the name 'RepCo Marketing Inc.' is written out. The certificate is signed by Cecil B. Garner, President of RepCo, and refers to a sampling of Lot Number [97002] of the simulator solution." *Selix v. Director of Revenue*, 985 S.W.2d 380, 383 (Mo.App. E.D.1999). In the Datamaster maintenance report, the trooper recorded "RepCo Marketing Inc Lot Number 97002 Expiration Date 08–18–98 Ethanol Vapor Concentration .100 Instrument Meets Dept. of Health Standards," which clearly indicates that RepCo is the manufacturer. *Id.* Even though 19

CSR 25–30.051 requires that the standard simulator solution be certified by the supplier, it is reasonable to infer that since RepCo manufactured the solution, that it also supplied the solution to the Missouri State Highway Patrol. *Id.* We therefore find substantive compliance with the regulation. *Guccione v. Director of Revenue*, 988 S.W.2d 649, 653 (Mo.App. E.D.1999). As long as there is substantive compliance with the procedural requirements, the certificate of analysis does not need to use precisely the identical language used in the regulation. *Meurer v. Director of Revenue*, 984 S.W.2d 873, 876–77 (Mo.App. E.D.1999). Accordingly, the trial court erred in refusing to admit the records.

The admission of the records presented by the Director would have established a prima facie case. As noted, *supra*, once the Director establishes a prima facie case, the burden shifts to the driver to rebut the prima facie case by a preponderance of the evidence. *Plank*, 982 S.W.2d at 814. In this case, the trial court granted Schulte a directed verdict at the close of the Director's case. Schulte was not given an opportunity to present evidence. Therefore, the case must be remanded.

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.