**Jonathan A. MAYBERRY,**
**Plaintiff–Respondent,**

v.

**DIRECTOR OF REVENUE,**
**Defendant–Appellant.**

No. 22354.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 21, 1999.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant.

Joseph D. Woodcock, Aurora, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

This is an appeal by Missouri's Director of Revenue (Director) from a judgment restoring driving privileges for Jonathan A. Mayberry (Mayberry). The appeal follows a trial *de novo* after an administrative suspension of Mayberry's driving privileges under § 302.500 *et. seq.* Director had ordered the suspension after Mayberry was arrested for allegedly driving while intoxicated in violation of a Webb City, Missouri, ordinance. The issue on appeal is whether the evidence

presented to the trial judge compelled a finding that the arresting officer had probable cause to believe that Mayberry had been the driver. We answer that question, "No." We affirm.

On November 17, 1996, at approximately 1:26 a.m., police officer Brown of the Webb City, Missouri, police department, saw an automobile sitting on a shopping center parking lot. The car had not been at that location when Officer Brown went by twenty minutes earlier. As none of the stores in the shopping center were open, he pulled onto the lot to find out why people were there at that time of the morning.

Officer Brown testified that as he approached the car, "two or three subjects" were out "walking around." When Brown asked the persons outside the car what they were doing, they answered: "[J]ust out stretching, walking and stretching [our] legs." Brown testified that Mayberry was the only person in the car when he arrived, that he was sitting "in the driver's seat behind the wheel," the engine was running, the car lights were on, and the door on the driver's side was closed. Brown recalled that the door on the passenger's side was open.

In contrast, Randy Naylor, Jr., testified that as Brown approached, he (Naylor) was in the car, seated on the passenger's side of the car. Naylor also testified that both doors of the car were open and that he and Mayberry were "sitting with our legs . . . just hanging, resting . . . outside the car." Naylor's explanation of why he and Mayberry were so located in the car follows. When the group left Kansas around 11:00 p.m. on November 16, Naylor decided that he should drive. As Naylor drove from Kansas to Webb City, Missouri, Mayberry was in the right front passenger seat and three other young men were in the back seat. The automobile, a two-door Dodge Daytona, had restricted space in the back, especially when the front seats were moved back to accommodate Mayberry's and Naylor's height. Consequently, Naylor pulled over at the parking lot in Webb City "[b]ecause the three in the back were cramped up . . . and wanted to stretch." Upon stopping, all five persons got out, including Mayberry. Naylor and Mayberry did not stay out of the car "very long at all, [because] it was mainly for the three in the back to stretch." According to Naylor, he had "no idea" why he sat down on the passenger side of the car after stretching or why Mayberry went to the driver's side. He explained that "my door was open so Jeff could get in."

Mayberry also testified that Naylor drove from Kansas to Webb City, Missouri, that they stopped to stretch their legs, that everyone got out of the car, and that upon returning to the car, he, "for some reason, just plopped down in the driver's seat."

After officer Brown talked to people outside the car, he approached Mayberry and immediately noted a strong odor of alcohol about his "person." When Mayberry produced his license, Brown noticed his speech was slurred and his eyes were bloodshot and glassy. Mayberry told Brown they had just come from Kansas and "pulled in . . . so they could stretch." Mayberry also told Brown that he had "been drinking . . . and had two or three beers over in Kansas." As they talked, officer Brown came to believe that Mayberry "had driven to [the parking lot] location," yet Brown never asked any of the group who had been driving before arresting Mayberry.

After Brown's initial observations of Mayberry, he gave him several field sobriety tests. When Mayberry failed all the field tests, Brown arrested him for violating Webb City's ordinance against driving while intoxicated on that city's public streets. A breath test given Mayberry at 1:56 a.m. revealed his blood alcohol content at 0.12% by weight.

Brown acknowledged that Mayberry never admitted to operating a motor vehicle in Webb City, Missouri, on the night in question. To the contrary, Brown said that "after one of the tests he [Mayberry] advised me he hadn't [driven a car in Missouri that night.]" Moreover, none of the car's occupants told officer Brown that Mayberry had been driving. When Brown did ask Mayberry if he had been driving—an inquiry made after arrest and as part of the Alcoholic Influence

Report questioning—Mayberry denied operating the car.

The trial court ruled for Mayberry and against Director. This appeal followed.

■ On appeal, Director asserts that the trial court erred in setting aside Director's suspension or revocation of Mayberry's driving privileges. Director maintains that the trial judge misstated and misapplied the law and based his judgment on insubstantial evidence. Mayberry counters, insisting that officer Brown did not have probable cause to believe that he had driven the car on the public streets of Webb City, Missouri.[1]

Review of this nonjury case is under Rule 73.01(c). As that rule is interpreted, this court is to affirm the trial court's decision unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Rogers v. Director of Revenue,* 947 S.W.2d 475, 477[2] (Mo.App.1997) (citing *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)). We give due regard to the opportunity of the trial judge to determine the credibility of witnesses. *McDaniel v. Director of Revenue,* 875 S.W.2d 245, 246[2] (Mo.App.1994); Rule 73.01(c)(2). "The trial judge can disbelieve testimony even when uncontradicted." *McDaniel,* 875 S.W.2d at 246[2].

■ "Suspension or revocation of driving privileges, pursuant to § 302.505.1 RSMo [Cum.Supp.1996], requires a two-part showing by the director of revenue: (1) the driver was arrested on probable cause that he or she was driving in violation of an alcohol-related offense, and (2) the driver had been driving at a time his blood alcohol content was at least 0.10% by weight." *Rogers,* 947 S.W.2d at 476–77[1]. "These showings must be made by a preponderance of the evidence." *Id.* at 477[1].

■ Probable cause exists when facts and circumstances would warrant an individual of reasonable caution to believe that an offense has been committed. *Id.* at 477[3]. Any determination of whether an officer had probable cause to make an arrest has to be made by viewing the situation as it would have appeared to a prudent, cautious, and trained police officer. *Id.* at 477[4]. "The type of facts needed to determine probable cause are found in the definition of the substantive offense and in case law dealing with the sufficiency of the evidence to convict of the substantive offense." *Wilcox v. Director of Revenue,* 842 S.W.2d 240, 242[3] (Mo.App. 1992). "To form a belief amounting to probable cause, the arresting officer need not possess all the information concerning the offense and the arrestee's participation in it." *Id.* at 243[9]. Circumstantial evidence may be relied on when the officer does not actually see who operated the motor vehicle. *Id.* at 243[5]. Thus, it is not necessary for an officer to actually observe a person driving in order to have probable cause to arrest for driving while intoxicated. *Chinnery v. Director of Revenue,* 885 S.W.2d 50, 51[5] (Mo. App.1994).

■ On the other hand, "mere suspicion is insufficient to establish probable cause." *Wilcox,* 842 S.W.2d at 243. Probability and reasonableness characterize the concept of probable cause. *Id.* Probable cause is a fluid concept and, as such, turns on the assessment of the probabilities in particular factual contexts. *Id.*

In urging reversal here, Director says that officer Brown's testimony established "more than enough probable cause to arrest Mayberry for driving while intoxicated." To support his argument, Director cites Brown's testimony that he saw Mayberry behind the steering wheel of the parked car, the car's engine was running, the headlights were burning, and the vehicle had been on the lot for only twenty minutes. Director also refers us to Brown's testimony that Mayberry told him "they just pulled in there so they could stretch" after driving from Kansas. Relying on these facts and ignoring the factual context thereof, Director cites nine cases to support his claim that "[a]ny prudent, cautious police officer would have been

---

1. Webb City's ordinance 15–21 prohibits driving a motor vehicle while intoxicated "on any street, highway, alley, public right-of-way, or public place" of that city. The ordinance does not encompass driving while intoxicated on private parking lots.

justified in arresting Mayberry under these circumstances." We are not persuaded, however, that these cases support Director's position because of factual distinctions.

Director relies most heavily on *Baptist v. Lohman,* 971 S.W.2d 366 (Mo.App.1998), a case in which a store clerk watched a truck that was parked on a lot for thirty to forty-five minutes before she called police. She saw only one person in the truck and saw no one else get into or out of the truck. When the officer arrived, the truck was running, the keys were in the ignition, the manual transmission was in neutral, and only the arrestee was in the truck. Under those circumstances, the *Baptist* court held that the trial court did not abuse its discretion in deciding that the officer had reasonable grounds to suspect that the arrestee was the one who had driven the truck to the lot and parked it. *Id.* at 368.

In contrast, here Mayberry was not alone with this car nor was he "seated behind the wheel" in the same way as the officer found the arrestee in *Baptist.* When officer Brown drove onto the parking lot, he saw "two or three subjects ... out walking around." Someone in the group told Brown that "they just pulled in there so they could stretch, that they had just came from Kansas" where they had drunk some beer. The trial court was entitled to believe Naylor's testimony that both car doors were open and that he and Mayberry were sitting with their legs outside the car. The location of the five men when Brown first saw them was consistent with what they told him was the reason they stopped, i.e., three occupants were out walking around and two were seated in the car with their feet and legs outside the car even though it was 1:30 a.m. in mid-November. Although Director claims that Mayberry's silence about who was driving is a factor officer Brown was entitled to consider in his assessment of the probabilities of who was driving, we find two problems with that argument.

First, it is not entirely clear that Mayberry was silent on this subject before he was arrested. During cross-examination, officer Brown testified:

"Q. [to Brown] Did he [Mayberry] ever tell you that he'd been driving a car in Missouri that night?

"A. Not to my recollection. Now after one of the tests he advised me he hadn't...."

From this and other evidence, it is not exactly clear when Mayberry first told Brown that he had not driven to the lot. Did this occur after one of the field sobriety tests, but before arrest, or did Mayberry's first denial occur after arrest in response to a question on the alcohol influence report form? Our duty is to view evidence and inferences therefrom in the light most favorable to the prevailing party and disregard the other party's evidence except as it may support the judgment. *See Matter of Estate of Froman,* 803 S.W.2d 176, 179[2] (Mo.App.1991). When so viewed, the quoted testimony supports a finding that Mayberry told Brown that he was not the driver before the arrest. Second, even if Mayberry never denied driving until directly asked after his arrest, it is hardly surprising. Viewing the situation as it would have appeared to a prudent, cautious, and trained police officer, we seriously doubt that officer Brown expected any of these young men to admit driving once Brown knew they were returning from Kansas where they had spent an evening drinking beer.

Although officer Brown testified that once he talked with Mayberry, he "believe[d] that [Mayberry] had driven to that location," the factual context supports the trial court's implicit finding that any reasonable assessment of the probabilities by officer Brown should have led him to view each of the car's occupants as a potential driver. While case law establishes that Brown did not have to possess all information about the offense and Mayberry's possible participation in order to have probable cause to arrest, *Wilcox,* 842 S.W.2d at 243, this record supports a finding that Brown acted on mere suspicion and ignored concepts of reasonableness and probability when he focused solely on Mayberry and made no attempt to question the other occupants about their participation or involvement. We find that the trial court's judgment was neither against the weight of

the evidence nor a misapplication of the law. We conclude that the trial court did not abuse its discretion in finding for Mayberry and against Director. Point denied.[2]

The judgment is affirmed.

GARRISON, C.J. and BARNEY, J., Concur.

**2.** The other cases cited by Director are distinguishable for the reasons stated: *Reinert v. Director,* 894 S.W.2d 162 (Mo.banc 1995) (arresting officer saw defendant driving erratically); *Pappin v. Director,* 958 S.W.2d 591 (Mo.App.1998) (arrestee admitted driving and offered no evidence at trial); *Rogers,* 947 S.W.2d 475 (defendant admitted driving); *Kienzle v. Director,* 944 S.W.2d 326 (Mo.App.1997) (arresting officer saw defendant driving); *Kramer v. Director,* 924 S.W.2d 308 (Mo.App.1996) (officer found arrestee *alone* in his truck, slumped over steering wheel, passed out, with truck running and head-lights on); *Johnson v. Director,* 920 S.W.2d 129 (Mo.App.1996) (officer saw defendant drive away, then quickly park in a no parking zone); *Chinnery,* 885 S.W.2d at 50 (arresting officer saw defendant behind steering wheel of his car with engine running and tires spinning, trying to get out of ditch, and there was no evidence that any other persons or vehicles were present at any time before the police arrived); *Wilcox,* 842 S.W.2d 240 (arrestee was found *alone* in his car, passed out under the steering wheel, and parked in a traffic lane on an interstate viaduct; arrestee presented no evidence).