Louis Robert HOUSE, Respondent
and Cross–Appellant,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Appellant and
Cross–Respondent.

Nos. 22585, 22699.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 19, 1999.

Jeremiah W. (Jay) Nixon, Attorney General, and Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for Appellant and Cross-Respondent.

William R. Dorsey, Clayton, for Respondent and Cross-Appellant.

CROW, Presiding Judge.

These consolidated appeals arise from the revocation of Louis Robert House's driver's license [1] by the Director of Revenue ("Director") pursuant to § 302.505.1, RSMo Cum.Supp.1997, which reads, in pertinent part:

> "The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight. . . ."

---

1. Section 302.500(4), RSMo 1994, provides that as used in sections 302.500 to 302.540, the term "license" means "a license, permit, or privilege to drive a motor vehicle issued under or granted by the laws of this state."

Following the revocation,[2] House[3] filed a two-count petition in the Circuit Court of Crawford County. Count I prayed for trial de novo per § 302.535.1, RSMo Cum. Supp.1997. Count II prayed for "limited driving privileges."

The trial court, after trial de novo, ultimately entered judgment on Count I setting aside Director's revocation of House's license. On Count II, the trial court ruled: "[T]he Court ... finds in favor of [Director] and against [House]. The requested relief in Count II, is moot."[4]

Director brings appeal 22585, attacking the judgment as to Count I only. House brings appeal 22699, attacking the judgment as to Count II only.

## Appeal 22585

■ Resolution of this appeal requires a synopsis of the evidence at the trial de novo.

Trooper Mark D. Ward, Sr. of the Missouri State Highway Patrol testified he was on duty in a marked vehicle "a little before two [a.m.]," January 7, 1998. Ward[5] recounted: "As I came to the stop sign at the 203 Exit of I–44 I observed a blue pickup turn from Route F onto Daniels Road into the wrong lane and park on the wrong side of the roadway."

Ward approached the pickup and saw it was occupied by a driver and a passenger. Ward identified House as the driver. Ward asked House "to step out of the vehicle"; Ward asked the passenger "to remain seated."

House complied with Ward's request, positioning himself where Ward's "headlights were shining." Ward observed House's eyes were "bloodshot and glassy in appearance." Additionally, Ward noticed House's balance "seemed to be uncertain" and House had "a distinct smell of an intoxicating beverage" about his person.

At Ward's request, House performed "a series of field sobriety tests." House's performance, coupled with his speech— Ward described it as "slurred"—convinced Ward that House was intoxicated. Consequently, Ward arrested House and took him to the "zone office." There, using a "Data Master," Ward administered a "breath analysis test" to House. The instrument recorded a reading of ".143 percent BAC."[6]

On cross-examination, Ward related that after he arrested House, the passenger in the pickup got out and "wanted to know where Mr. House was going to go." Ward's testimony continued:

"Q. Did you ask [the passenger] if he had been driving the vehicle?

A. No, sir. But he volunteered the information that he had been driving earlier in the night, but wanted to talk on the telephone so they had switched drivers.

Q. Okay. He didn't say when he switched, did he?

A. No, sir."

House, testifying at the trial de novo, admitted he owned the pickup and was seated on the driver's side when Ward appeared. However, House avowed he did not drive the pickup to the site where Ward arrested him. House's testimony:

2. As best this court can deduce from the record, the license was revoked, not merely suspended.

3. For brevity and clarity, this opinion refers to Mr. House by his surname. No disrespect is intended.

4. As detailed later in this opinion, at the conclusion of the trial de novo the trial court announced a finding in favor of Director on Count I and in favor of House on Count II; however, the judgment (entered 35 days later) adjudicated Counts I and II as set forth above.

5. As with House, this opinion refers to Trooper Ward by his surname. No disrespect is intended.

6. Director presented evidence that the Data Master underwent a "maintenance check" on December 11, 1997, and again on January 12, 1998. On both occasions, the instrument performed within "Department of Health specifications."

"Q. ... Did [your pickup] come up to Highway F and make a left turn onto Daniels Road at that time of night?

A. Yes, sir. It did.

Q. And who was driving the vehicle at that time?

A. Mark Williams.

Q. And what happened after you turned onto Daniels Road?

A. We stopped the vehicle. I exited the vehicle from the passenger side. He was using my cellular phone and was having trouble hearing. He slid across the front seat and sat on the passenger side. I walked around the truck, got in on the driver's side and sat down.

Q. Okay. How long had you been stopped there before Trooper Ward came up?

A. Approximately three minutes."

House testified Ward did not ask who had been driving. House added: "My passenger volunteered the information after Officer Ward arrested me.... He told Officer Ward at the time, 'Officer, I was driving the truck. We had just stopped. I was driving the truck.'"

In rebuttal, Ward testified House never said he "was not the driver," and it was only after Ward arrested House that the passenger said he (passenger) had been driving "earlier in the night."[7]

At the conclusion of the evidence, the trial court said: "The Court finds in favor of Respondent[8] and sustains the revocation order."

7. The passenger—Mark Williams, according to House—did not appear at the trial de novo. House explained: "They just don't know where he's at. I did attempt to get ahold of him."

8. Director was respondent in the trial court.

9. This court finds no copy of the order in the record.

10. House's brief, authored by his lawyer, states: "As I remember the Court's comment, the Court stated that he thought that limited

The trial court then considered whether House should receive "limited driving privileges" as prayed for in Count II. After the parties' lawyers cited statutes and case law, the trial court announced: "The Court grants Petitioner's application for hardship driving privileges."

This court gleans from the record that the trial court thereupon signed an "Order Granting Limited Driving Privileges."[9] However, the record does not show the trial court entered judgment adjudicating Count I at that time.

Twenty days after trial, Director filed a motion imploring the trial court to set aside the order granting "hardship driving privileges." Director's motion averred § 302.309.3(5)(h), RSMo Cum.Supp.1997, barred such relief.

Some two weeks later, the parties' lawyers appeared in the trial court. The record contains no transcript of that proceeding; however, the trial court's docket sheet shows the court set aside the findings it made immediately after trial and entered judgment as described earlier in this opinion. As to Count I, the judgment reads:

"[T]he Court ... finds by a preponderance of the evidence that Petitioner was arrested without probable cause and finds in favor of Petitioner and against the Respondent. Therefore, the suspension [sic] of Petitioner's license pursuant to Sec. 302.505.1 is hereby set aside."

The record does not reveal why the trial court departed from its original finding in favor of Director on Count I.[10]

Director's sole point relied on reads:

driving privileges was a good solution, but since the Director objected to the Limited Driving Privileges, there was substantial evidence to support House's petition that he wasn't the driver of the truck." This court cannot consider counsel's narrative because an appellate court must take the record as presented. *Pretti v. Herre,* 403 S.W.2d 568, 569[3] (Mo.1966). The record cannot be supplemented by extraneous matter not found in the transcript nor conceded by the adverse party. *Id.* As explained in *In re Marriage of Wright,* 990 S.W.2d 703, 707[2] (Mo.App. S.D.

"The trial court erred in setting aside the Director's revocation of House's driving privilege under § 302.505, RSMo Supp.1997, and its judgment was against the weight of the evidence and a misapplication of law because the Director proved that the arresting officer had probable cause to arrest House for driving while intoxicated and that his blood alcohol content was at least .10% by weight in that: (1) the trooper smelled an odor of an intoxicating beverage about House; (2) the trooper observed that House's eyes were bloodshot and glassy, and that his balance was uncertain; (3) House admitted that he had drank [sic] a few beers; (4) House failed the field sobriety tests he was asked to perform; and, (6)[sic] House's blood alcohol concentration was .143%."

■ The standard of appellate review enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applies to review of a judgment upon trial de novo in a proceeding under § 302.535. *Rogers v. Director of Revenue*, 947 S.W.2d 475, 476–77[2] (Mo.App. E.D.1997); *Matthews v. Director of Revenue*, 938 S.W.2d 279, 282[8] (Mo.App. S.D.1997). The judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Rogers*, 947 S.W.2d at 476–77[2]; *Matthews*, 938 S.W.2d at 282[8].

Director maintains—and this court agrees—there was compelling evidence that Ward, at the time he arrested House, had probable cause to believe House's blood alcohol concentration was .10 percent or more by weight. Additionally, argues Director: "[T]he issue is not whether the Director proved that House was actually driving his truck, but whether the trooper had probable cause to believe that he was."

This court has construed § 302.505.1 to require Director to prove two elements in order to prevail at a trial de novo. By a preponderance of the evidence, Director must show: (1) the driver was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the driver had been driving at a time when his or her blood alcohol concentration was at least .10 percent by weight. *Mayberry v. Director of Revenue*, 983 S.W.2d 628, 631[2] (Mo.App. S.D.1999); *Kienzle v. Director of Revenue*, 944 S.W.2d 326, 327[2] (Mo.App. S.D.1997); *Brandom v. Director of Revenue*, 931 S.W.2d 510, 511[1] (Mo.App. S.D.1996).

Cases from the Eastern and Western Districts are in accord. *Rogers*, 947 S.W.2d at 476–77[1]; *Oughton v. Director of Revenue*, 916 S.W.2d 462, 464[1] (Mo. App. E.D.1996); *Helton v. Director of Revenue*, 944 S.W.2d 306, 308[2] (Mo.App. W.D.1997); *Kramer v. Director of Revenue*, 924 S.W.2d 308, 310[2] (Mo.App. W.D. 1996).

The cases cited in the two preceding paragraphs arguably construe § 302.505.1 more narrowly than it is written, as a contention could be made that the statute—quoted in pertinent part at the outset of this opinion—requires probable cause to *believe* the person arrested was driving a motor vehicle with the proscribed blood alcohol concentration, but does not require that the arrestee be *in fact* the driver. Said another way, a literal reading of the statute could arguably lead one to conclude that if (a) there is probable cause to believe a person is driving a motor vehicle while his or her blood alcohol concentration is .10 percent or more by weight, and (b) he or she is arrested, his or her driver's license is subject to suspension or revocation even though someone else was in fact driving the vehicle.

■ However, as this court understands *Mayberry*, 983 S.W.2d at 631[2], *Kienzle*,

1999), an appellate court cannot accept counsel's statements as a substitute for record proof, even though the court has no reason to doubt counsel's accuracy.

944 S.W.2d at 327[2], and *Brandom,* 931 S.W.2d at 511[1] (and the cases from the Eastern and Western Districts cited immediately after them), Director, in order to sustain the suspension or revocation of a license, must prove: (1) the *driver*—not someone *believed* to be the driver—was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the *driver*—not someone *believed* to be the driver—was driving with a blood alcohol concentration of at least .10 percent by weight. To hold otherwise would mean an individual who was not in fact driving a motor vehicle could have his or her driver's license suspended or revoked if arrested on probable cause to believe he or she was driving while his or her blood alcohol concentration was .10 percent or more by weight. Director cites no authority for that proposition.

The trial court was entitled to believe House's testimony that Williams drove the pickup to the arrest site, as credibility of witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of any witness's testimony. *Herbert v. Harl,* 757 S.W.2d 585, 587[1] (Mo. banc 1988).

The only finding the trial court made on Count I was that House "was arrested without probable cause." That finding is perplexing, as it could be understood to mean Ward (a) had no probable cause to believe House was driving the pickup, or (b) had no probable cause to believe House's blood alcohol concentration was .10 percent or more by weight. It is difficult for this court to comprehend how a fact-finder could reach either conclusion on the evidence here. However, this court need not speculate about the logic that guided the trial court to its judgment.

In this judge-tried case, all fact issues upon which no specific findings were made shall be considered as having been found in accordance with the result reached,

Rule 73.01(a)(3), Missouri Rules of Civil Procedure (1998); *Superior Outdoor Advertising Co. v. Snadon,* 965 S.W.2d 421, 422[4] (Mo.App. S.D.1998), and the judgment will be affirmed on any reasonable theory supported by the evidence. *Weatherwax v. Redding,* 953 S.W.2d 162, 167[5] (Mo.App. S.D.1997); *Nail Boutique, Inc. v. Church,* 758 S.W.2d 206, 207–08[3] (Mo. App. S.D.1988).

As explained earlier, Director was required to prove, *inter alia,* that House was driving the pickup when it arrived at the site where Ward ultimately arrested House. House's testimony that Williams was driving was sufficient to support a finding against Director on that issue. Consequently, this court, confining its review within the limitations by which it is bound, is compelled to affirm the trial court's nullification of Director's revocation of House's license.

The portion of the judgment adjudicating Count I of House's petition is affirmed.

### Appeal 22699

House, the appellant in this appeal, prays that in the event this court reverses the judgment as to Count I, this court find he is entitled to hardship driving privileges.

Because this court has affirmed the judgment as to Count I, this court holds the trial court did not err in ruling that Count II of House's petition was moot.

The portion of the judgment pertaining to Count II is affirmed.

PARRISH and SHRUM, JJ., concur.