**Roy HAMPTON, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 57123.**

Missouri Court of Appeals,
Western District.

July 18, 2000.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim, Asst. Atty. Gen., Jefferson City, for appellant.

James Kelso Journey, Clinton, for respondent.

Before VICTOR C. HOWARD, Presiding Judge, Judge JOSEPH M. ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Respondent Roy Hampton was arrested for driving while intoxicated and, pursuant to Section 302.505 RSMo. Cum.Supp.1996, the Director suspended his driving privileges. Mr. Hampton appealed that suspension. Following a trial at which the Director attempted to prove that Mr. Hampton was arrested upon probable cause to believe that he was driving while intoxicated, the trial court entered judgment for Mr. Hampton. It found that, based on the circumstantial evidence before it, the Director had failed to prove that Mr. Hampton was the driver of the truck which the police found on the side of the road 40 yards from the porch where Mr. Hampton was standing, and, therefore; the Director had failed to make its case against Mr. Hampton. The Director appeals, arguing that the uncontroverted evidence permitted only one conclusion— that the arresting officer had probable cause to believe that Mr. Hampton was driving while intoxicated, that he had a blood alcohol level above the legal limit, and that we should reverse and remand with directions to enter judgment for the Director. Because we find that there was substantial evidence to support the court below's determination that the Director failed to meet its burden of proving that the officer had probable cause to believe that Mr. Hampton was driving the truck in question while intoxicated, or that he was in fact driving the truck at all, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

The facts adduced below, viewed in the light most favorable to the trial court's judgment, are as follows: On January 28, 1998, at approximately 1:30 a.m., Officer Mark Pitts of the Windsor Police Department was on routine patrol when he noticed a red pick-up truck pull up behind him at the intersection of Tebo and Washington, in Windsor, Missouri. Officer Pitts kept driving on Tebo to the next intersection. As the officer began to make a left

turn, he noticed the truck pull off to the side of the road. After completing the turn, the officer again proceeded to the next intersection, but waited there so he could look behind him to see whether the truck had pulled off the road because of alcohol use by the driver or because the driver was picking up someone at a nearby residence.

When the officer saw that the truck remained pulled off onto the side of the road, he went around the block and came back up Tebo and stopped next to the truck. He said that he lost sight of the vehicle for approximately 30 seconds as he went around the block. By the time he got back to the truck, there was no one in it. He got out of his patrol car and looked around, and saw Mr. Hampton just reaching the porch of a residence some 40 yards away from the pick-up truck. Not seeing anyone else in the area, the officer asked Mr. Hampton to come over and talk with him. Mr. Hampton did so.

Officer Pitts did not ask Mr. Hampton whether he lived in the house with the porch where the officer had first seen him, whether he was the owner of the truck, or whether he had been driving the truck. Instead, according to the officer's trial testimony:

> I asked why he went in the ditch, if he was going to talk to somebody. Mr. Hampton said, "Yes, I was going to talk to some friends. I pulled off to the side of the road to talk to them, but they left."

Mr. Hampton said nothing else indicating whether he had been driving the red truck in particular or whether it was his truck, and the officer had not seen another vehicle or pedestrian leaving the area of the red truck. But, believing Mr. Hampton had been driving the truck, smelling alcohol on Mr. Hampton and noticing his eyes were dilated, glassy, and bloodshot, Officer Pitts believed Mr. Hampton had been driving while intoxicated. He radioed for the assistance of Officer Monte Crain, who was certified to perform the horizontal gaze nystagmus test. Mr. Hampton failed the field sobriety tests administered by Officer Crain. At that point, the officers arrested him for driving while intoxicated and took him to the police station. At the station, the police completed an Alcohol Influence Report. As a part of that report, they for the first time asked Mr. Hampton whether he was operating the red pickup truck, and he answered "no." They gave him a breath test, which revealed a blood alcohol level of .15%.

Pursuant to Section 302.505 RSMo Cum. Supp.1996, the Director of Revenue suspended Mr. Hampton's driving privileges. Subsequent to that revocation, on June 4, 1998, Mr. Hampton timely filed his Petition for Trial De Novo in the Circuit Court of Henry County. After the presentation of the Director's evidence, Mr. Hampton moved for judgment in his favor, arguing that the Director failed to meet his burden of showing that the officer had probable cause to believe that he was the driver of the vehicle, or that he was driving while intoxicated. Following consideration of the motion, the court entered judgment for Mr. Hampton, stating:

> Well, if there—Quite honestly, Mr. Lashley, if there were any admissions that I felt had been made by the Petitioner, I'd look at it differently. But the only statement made by the Petitioner— and it was specifically outlined by the officer, and he agreed that exactly what the Petitioner said was—in response to the question, as I recall it—and I don't have the report in front of me—but, "Is the reason you drove off the road and into the ditch because you were going to stop and talk to someone?" And he said, "Yes. I was going to talk to some friends, but they drove off."
>
> And I—You know, I think that that's a pretty vague admission in the face of the fact that he was some distance away from the vehicle. He had driven off and not come back for 30 seconds, which doesn't sound like very long, but I think

we'll agree is more than enough time for somebody else to have been driving the vehicle. And I just—And then both officers agree that the Petitioner denied driving the vehicle when directly asked.

This appeal by the Director followed.

## II. STANDARD OF REVIEW

■■■■ The judgment of the trial court will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976); *Endsley v. Director of Revenue*, 6 S.W.3d 153, 161 (Mo.App. W.D.1999). If the evidence is uncontroverted or admitted, so that the real issue is a legal one as to the legal effect of the evidence, then we need not defer to the trial court's judgment, *Kienzle v. Director of Revenue*, 944 S.W.2d 326, 328 (Mo.App. S.D.1997). But, where evidence is presented which, if believed, would support a finding in favor of one party, but contrary or inconsistent evidence is also presented, then it is up to the judge to resolve the factual issues, including determining the credibility of witnesses. So long as its determination is supported by substantial evidence, we will affirm, regardless whether we would have reached the same result. *Endsley*, 6 S.W.3d at 165, and cases cited.

## III. SUBSTANTIAL EVIDENCE SUPPORTED FINDING THAT THE STATE FAILED TO PROVE MR. HAMPTON WAS DRIVING WHILE INTOXICATED

The key issue on appeal is whether there was substantial evidence to support the trial court's decision that the Director had failed to meet the requirements of Section 302.505 for revoking Mr. Hampton's license for driving while intoxicated. That statute says in relevant part:

The department shall suspend or revoke the license of any person upon its determination that the person was arrested *upon probable cause to believe such person was driving a motor vehicle* while the alcohol concentration in the person's blood, breath, or urine was ten-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500

Sec. 302.505 RSMo Cum.Supp.1996 (emphasis added).

The Director argued to this Court that he satisfied his burden of proof under this Section because the uncontroverted evidence showed that "Hampton was arrested upon probable cause and that he had a blood alcohol concentration of .10%." Thus, the Director argues, the trial court had no option except to affirm the revocation of Mr. Hampton's license.

■■■■ We disagree. First, we reject any suggestion that the Director can meet his burden under the statute merely by proving that Mr. Hampton was in fact intoxicated and that the officer arrested him upon probable cause to believe he was driving. While, read literally and in isolation, Section 302.505 does not expressly state that the person who is arrested for driving while intoxicated in fact must be the driver, this is the necessary intendment of the statute, the purpose of which is to suspend the license of persons who are *driving* while intoxicated. Being intoxicated while not driving is not a crime, and is not a basis for suspension of one's license.

In the face of an argument that led to a similarly absurd reading of Section 302.505 in *Collins v. Director of Revenue*, 691 S.W.2d 246, 252 (Mo. banc 1985), our Supreme Court admonished that, where a literal reading of a predecessor to that section would have led to "unreasonable results and inequities," such a literal interpretation should give way to a reasonable interpretation that comports with the intendment of the statute. *Id.* Moreover, the statute must be read in *pari materia* with other statutes on the same subject, and such a reading makes it clear that,

where the question of who was driving is put at issue in an hearing, the Director must offer proof that the person whose license is to be suspended was, in fact, the driver.

More specifically, Section 302.505 simply states that an officer may arrest upon probable cause to believe that the person is the driver and upon proof of intoxication. But, where the person whose license is suspended or revoked appeals the suspension, then Section 302.530.4 specifically provides that at the resultant administrative hearing "[t]he sole issue at the hearing shall be whether by a preponderance of the evidence the person *was driving a vehicle* pursuant to the circumstances set out in section 302.505." Sec. 302.530.4 RSMo Cum.Supp.1996 (emphasis added). And, a person aggrieved by the Department's decision may appeal for a trial *de novo* in the circuit court, at which the burden shall be on the Director to prove that the Department's decision was supported by substantial evidence. Sec. 302.535.

In interpreting the predecessor to Sections 302.505 and 302.530 in *Collins,* our Supreme Court thus held that the essential prerequisite for revocation under them, "is *not* whether the arresting officer possessed some particular type of probable cause, but whether the person had the excessive amount of blood alcohol concentration *while he or she was driving.*" *Collins,* 691 S.W.2d at 252 (emphasis added). The Director's contrary argument, that a person's license may be revoked under Section 302.505 even if the Director cannot prove at a hearing that the person was in fact the driver, is thus not only contrary to common sense, but is in conflict with Section 302.530.4 and *Collins,* which require the Director to prove at the hearing that the person was *driving* while intoxicated.

Our holding is not intended to suggest that the arresting officer must actually see the person driving in order to meet this standard; proof that the person was driving or operating the vehicle may be made by circumstantial evidence. *See, e.g., Mayberry v. Director of Revenue,* 983 S.W.2d 628, 631 (Mo.App. S.D.1999). But, assuming that the police officer acted in good faith and upon probable cause to arrest, if suspension or revocation is contested, and the judge does not find that there is sufficient proof at trial to support the conclusion that the person whose license is to be revoked was in fact driving or operating the vehicle, then the judge cannot affirm revocation of that person's license merely upon proof that the person was arrested upon probable cause and was intoxicated.

The Southern District of this Court addressed this very issue in *House v. Director of Revenue,* 997 S.W.2d 135 (Mo. App. S.D.1999). There, as here, the Director appeared to argue that the court must affirm revocation of a license merely upon proof that the person in question was intoxicated and that the officer arrested him or her upon probable cause, even if questions later appear as to whether that person was the driver. In *House,* a trooper saw a pickup parked along the wrong side of the road. He pulled over to it. He assumed, without asking, that the person sitting in the driver's seat had been the one who was driving the pickup, and asked that person—Mr. House—to perform a variety of sobriety tests. When Mr. House failed the tests, the officer arrested him for driving while intoxicated. However, the passenger indicated that he, not Mr. House, had been driving, and that after the pickup pulled over to the side of the road, he had slid over to the passenger seat so that he could make a call on his cellular telephone, and Mr. House had gone around to the driver's seat and gotten in the vehicle, but had not driven it. The trial court initially indicated that he would affirm the suspension, but ultimately issued an order holding that the Director had failed to show probable cause that Mr. House was the driver, and set aside the suspension of Mr. House's license.

On appeal, the Southern District agreed with the Director that the officer had probable cause to arrest Mr. House upon finding him in the driver's seat. However, it rejected the Director's further argument that this, and intoxication, were all he had to show, and he did not have to show that Mr. House was in fact the driver. To the contrary, it held, the:

> Director, in order to sustain the suspension or revocation of a license, must prove: (1) the *driver* – not someone *believed* to be the driver – was arrested on probable cause that he or she was committing an alcohol-related driving offense, and (2) the *driver* – not someone *believed* to be the driver – was driving with a blood alcohol concentration of at least .10 percent by weight. To hold otherwise would mean an individual who was not in fact driving a motor vehicle could have his or her driver's license suspended or revoked if arrested on probable cause to believe he or she was driving while his or her blood alcohol concentration was .10 percent or more by weight. Director cites no authority for that proposition.

*House*, 997 S.W.2d at 139. The court concluded that on the record before it the court below could have believed that Mr. House's friend was the driver, and so set aside the revocation.

In support of its determination, *House* cited this Court's decision in *Mayberry*, in which we addressed a similar issue as to whether the trial court had erred in determining that the Director had failed to meet his burden under Section 302.505 based on circumstantial evidence which showed Mr. Mayberry may have been driving while intoxicated. In *Mayberry*, a Webb City police officer noticed a car parked in a shopping center parking lot that he had not seen at that location when he passed by 20 minutes earlier. The officer entered the parking lot to investigate why the car was there, as it was approximately 1:30 a.m. and none of the stores were open. The officer testified that, when he ap-

proached the car, he observed that two to three men were outside the car, and that the only person inside the car was Mr. Mayberry. The latter was sitting in the driver's seat with the driver's door closed, the engine running, the headlights on, and the passenger door closed.

However, a member of the group, Mr. Naylor, testified that when the officer approached he was seated in the passenger seat alongside Mr. Mayberry, who was in the driver's seat, that their legs were outside the car, and that both the driver's side and passenger's side doors were open. He explained further he had been driving the car, not Mr. Mayberry, and that the reason they stopped was to allow the men who had been sitting in the back to stretch their legs, as the rear seating area of the car was small. Mr. Naylor stated that while they were driving, Mr. Mayberry was in the front passenger seat and that when they stopped to let the three men in the back out to stretch, both he and Mr. Mayberry sat back in the car as they did not need to stretch, although he had "no idea" why Mr. Mayberry went to the driver's side to sit. Further, the evidence showed that Mr. Mayberry, who appeared intoxicated, told the officer before being arrested that he was not the driver. Nevertheless, the officer arrested Mr. Mayberry for driving while intoxicated without asking any of the others whether they had been driving. *Id.* at 630–32.

Noting that the trial court was free to believe Mr. Naylor's account rather than that of the police officer, *Mayberry* found that the officer's arrest here was driven by mere suspicion, not by reasonableness or the degree of probability characteristic of probable cause. In particular, in addition to not having observed Mr. Mayberry drive, Mr. Mayberry's pre-arrest denial and other surrounding circumstances "should have led [the officer] to view each of the car's occupants as a potential driver." *Id.*

In applying the principles set out in *Collins*, *House* and *Mayberry* to the in-

stant case, we note that Officer Pitts did not see Mr. Hampton driving, and the only time he was asked whether he was driving, he said no. There is no evidence that the pickup was registered to or owned by him, and the officers never asked whether the truck was his, or whether he was standing at the foot of the porch of his own house. Officer Pitts did stop and talk with Mr. Hampton after seeing him by the porch, and he did not see anyone else in view, and Mr. Hampton was intoxicated, but Officer Pitts did not ask Mr. Hampton whether he was driving. Even on direct examination, Officer Pitts described his conversation with Mr. Hampton simply as the following:

> MR. LASHLEY[1]: Did you have a conversation with him at that time?
>
> OFFICER PITTS: Yes, I did.
>
> MR. LASHLEY: Okay. What did he tell you?
>
> OFFICER PITTS: I asked why he went in the ditch, if he was going to talk to somebody. Mr. Hampton said, "Yes, I was going to talk to some friends. I pulled off to the side of the road to talk to them, but they left."
>
> MR. LASHLEY: Okay. Did you have any other conversation with him at that time?
>
> OFFICER PITTS: No, I did not.

It is Mr. Hampton's response to Officer Pitts' compound question, combined with the circumstantial evidence of Mr. Hampton being the only one seen in the general area of the car, that the Director contends, taken together, required a finding for the Director as a matter of law. The Director ignores the evidence which was developed on cross-examination of Officer Pitts, however, which was as follows:

> MR. JOURNEY[2]: Officer, I want to go back. You testified earlier you did not observe the Petitioner in this case operate a vehicle, did you?
>
> OFFICER PITTS: No, I did not.

> MR. JOURNEY: And Officer Crain didn't observe the Petitioner in this case operating a vehicle, did he?
>
> OFFICER PITTS: No, he did not.
>
> MR. JOURNEY: Officer Catron did not observe the Petitioner in this case operating the vehicle, did he?
>
> OFFICER PITTS: No, he did not.
>
> MR. JOURNEY: And I want to direct you to your AIR form, if you will. And there's some standard questions on page 1 of that, one of which is you asked him, were you operating the vehicle. What was Mr. Hampton's response?
>
> . . . .
>
> OFFICER PITTS: I marked box "no."
>
> MR. JOURNEY: So then he told you he was not operating the vehicle?
>
> OFFICER PITTS: Yes, he did.
>
> MR. JOURNEY: And you, of course, hadn't observed him operating the vehicle?
>
> OFFICER PITTS: Yes, sir. That's correct. I hadn't seen him.
>
> MR. JOURNEY: The only—only way, if I understand your testimony, that you believe he was operating the vehicle was the statement in response to your question—And I want to read this very carefully from your report. If you'll go to your narrative, I'd like to go over that with you, page 1 of 2 on your typed narrative down about halfway on the page.
>
> OFFICER PITTS: I have it, sir.
>
> MR. JOURNEY: Are you with me? You stated in there, I asked the subject if the reason he pulled off the road and dropped the tire in the ditch was because he was going to talk to someone. Was that your question to him?
>
> OFFICER PITTS: Yes, it was.
>
> MR. JOURNEY: And his response was simply, as you've stated in there, Yes.

---

1. Attorney for the Director of Revenue

2. Attorney for Mr. Hampton

I was going to talk to some friends, but they drove off. That's his response?

OFFICER PITTS: Yes, it was.

MR. JOURNEY: Now, he did not, in that response, actually admit operating the vehicle, did he? He could have been saying I was going to talk to someone, couldn't he? In short, what I'm asking you, Officer, in the question that you asked him, you asked a compound question, didn't you? You asked for more than one thing to be answered?

OFFICER PITTS: I asked if he pulled off the road to talk to some friends, and he said yes, he pulled off the road to—

MR. JOURNEY: No. Your answer was that he didn't pull off the road. He said: I was going to talk to some friends, but they drove off. *That's what you put in your report.*

OFFICER PITTS: Okay.

MR. JOURNEY: *There's a difference there, isn't there? In other words, he didn't admit driving to you, did he?*

OFFICER PITTS: *Well, I took it that he admitted to driving.*

MR. JOURNEY: I understand that you took it that way. And I'm not faulting you for that. But your statement and what he said was not an admission that he was driving, was it?

OFFICER PITTS: I believe when he said yes, he was answering, yes, he pulled off the road—

MR. JOURNEY: I understand that you believe that.

OFFICER PITTS:—stating he was driving.

MR. JOURNEY: I respect your opinion in that regard, sir. And I'm not—I'm not questioning that you believe that. *But the answer was, Yes, I was going to talk to some friends, but they drove off. That was the answer, right?*

OFFICER PITTS: *That was the answer, yes, sir.*

MR. JOURNEY: *He didn't say yes, I was operating the vehicle, and I pulled over to talk to some friends?*

OFFICER PITTS: *No, he did not.*

MR. JOURNEY: Okay. That's all I'm saying. *And at no other time did he admit operating the vehicle, did he?*

OFFICER PITTS: *No, he did not.*

(emphasis added). In addition, the testimony of Officer Crain revealed the following:

MR. JOURNEY: And let me ask you this. What did you ask Mr. Hampton about his operation of the vehicle? Use the exact words if you would, please.

OFFICER CRAIN: Actually, I believe I was listening to conversation between Mr. Hampton and Officer Pitts as they were completing the questionnaire on the AIR report.

MR. JOURNEY: Okay. Let's go to that. That will be on page 2, the AIR, is what you're referring to; is that correct?

OFFICER CRAIN: Yes.

MR. JOURNEY: So you didn't ask Mr. Hampton if he was operating the vehicle?

OFFICER CRAIN: Right.

MR. JOURNEY: *So Mr. Hampton didn't tell you he was operating the vehicle, then?*

OFFICER CRAIN: *Right.*

MR. JOURNEY: Would that be correct?

OFFICER CRAIN: Right.

MR. JOURNEY: *And so your earlier testimony is mistaken?*

OFFICER CRAIN: *Correct.*

MR. JOURNEY: All right. Let's go to the second page of the AIR. Would you refer to that, please? You're familiar with these—Tell me where it is that Mr. Hampton told Mr. Pitts, in

response to the AIR questionnaire that he was operating the vehicle.

OFFICER CRAIN: I don't see it. As a matter of fact, I see where Officer Pitts has marked "no" when Mr. Hampton was queried on whether he was driving a vehicle or not.

MR. JOURNEY: *All right. So in all fairness to the Court, you did not then hear Mr. Hampton say that he was operating the vehicle?*

OFFICER CRAIN: *Yes. I was mistaken on that. I did not hear him say that.*

(emphasis added).

We agree with Mr. Hampton that, in light of this evidence, while Mr. Hampton was clearly intoxicated, a fact issue was presented as to whether the officer had probable cause to believe he was driving while intoxicated solely based on seeing Mr. Hampton by the porch and hearing his comment that he was going to talk to some friends, but they had driven off. While the officer may have sincerely understood this answer as being an admission that Mr. Hampton was driving the truck, it did not constitute such an admission, there was no direct evidence Mr. Hampton was driving the truck, he was not found in the truck but by a porch some 40 yards away, he was not asked whether the truck was his and, even at trial, no evidence was offered that it was his, and he denied he was driving the truck.

Based on these facts, the court below could have concluded that the officer had no more than a suspicion that Mr. Hampton was the driver, not amounting to probable cause. Certainly, the evidence presented by the Director was so inconsistent and inadequate on the issue whether Mr. Hampton was driving that it provided substantial evidence for the trial court to conclude that Mr. Hampton was not, in fact, the driver of the truck the officer saw. This is just what the trial court concluded, stating:

Well, if there—Quite honestly, Mr. Lashley, if there were any admissions that I felt had been made by the Petitioner, I'd look at it differently. But the only statement made by the Petitioner— and it was specifically outlined by the officer, and he agreed that exactly what the Petitioner said was—in response to the question, as I recall it—and I don't have the report in front of me—but, "Is the reason you drove off the road and into the ditch because you were going to stop and talk to someone?" And he said, "Yes. I was going to talk to some friends, but they drove off."

And I—You know, I think that that's a pretty vague admission in the face of the fact that he was some distance away from the vehicle. He had driven off and not come back for 30 seconds, which doesn't sound like very long, but I think we'll agree is more than enough time for somebody else to have been driving the vehicle. And I just—And then both officers agree that the Petitioner denied driving the vehicle when directly asked.

We agree with Mr. Hampton that the trial court's judgment was supported by substantial evidence, was not against the weight of the evidence, and did not misstate or misapply the law, *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and, accordingly, we affirm.

Judge JOSEPH M. ELLIS and Judge VICTOR C. HOWARD concur.