Scott L. SMITH, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 60281.

Missouri Court of Appeals,
Western District.

June 18, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., John Mollenkamp, Asst. Atty. Gen., Jefferson City, for Appellant.

John E. Casey; Brookfield, for Respondent.

PAUL M. SPINDEN, Chief Judge.

The Department of Revenue's director appeals the circuit court's judgment reinstating Scott L. Smith's driving license. The director suspended Smith's driving license under authority granted her by § 302.505.[1] The circuit court overturned the director's suspension on the ground that the director did not establish that Smith was operating the vehicle. The director contends that the circuit court's judgment is unsupported by substantial evidence and is against the weight of the evidence. She claims that she made a *prima facie* case that Smith did not rebut. We reverse the circuit court's judgment.

Driving while intoxicated can result in criminal charges and the director's civil, administrative law action to suspend a driving license. Criminal charges arise under § 577.010. Arising under § 302.505, this is a civil, administrative law action, not a criminal action. The gulf between the two worlds is vast.[2]

■ These civil actions are unlike criminal cases in which the state must establish guilt, beyond a reasonable doubt, without drawing any inferences from a defendant's asserting his constitutionally-protected right to stand silent. In these actions, the director's burden is to establish her case by a preponderance of the evidence, and she is free to draw inferences from an arrestee's failure to testify and to present evidence[3] and even to call the arrestee as a hostile witness in making her case.[4]

---

1. All citations to statutes refer to the 2000 Revised Statutes.

2. That the General Assembly deemed the two actions to be totally separate could not be more clear. In § 302.505.3, the legislature said, "The determination of [facts in a hearing under § 302.505] by the department is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect any suspension or revocation under this section."

3. In *Stringer v. Reed*, 544 S.W.2d 69, 74 (Mo. App.1976), a civil case involving a property contract dispute, this court's Southern District noted, " 'It is well settled that the failure of a party having knowledge of the facts and circumstances vitally affecting the issues on trial to testify in his own behalf ... raises a strong presumption that such testimony would have been unfavorable and damaging to the party who fails to proffer the same.' *Bean v. Riddle*, 423 S.W.2d 709, 720(9) (Mo. 1968). Although the failure of the defendants to testify 'cannot be treated as independent evidence of a fact otherwise unproven ... it can be considered in measuring the credibility or probative force of the evidence presented.' *Guthrie v. Gillespie*, 319 Mo. 1137, 6 S.W.2d 886, 889(5–6) (Mo.1928)." *See also Spaeth v. Larkin*, 325 S.W.2d 767, 772 (Mo. 1959); *State ex rel. Div. of Fam. Servs. v. Brown*, 897 S.W.2d 154, 158–59 (Mo.App. 1995).

4. Section 491.030 says, "Any party to any civil action or proceeding may compel any adverse party ... to testify as a witness in his

■ To establish a *prima facie* case for driving while intoxicated, the director has the burden of establishing by a preponderance of the evidence that the arresting officer had probable cause to arrest the driver for driving while intoxicated and that the driver's blood alcohol concentration was at least .10 percent by weight. Section 302.505.1; *Testerman v. Director of Revenue*, 31 S.W.3d 473, 475 (Mo.App. 2000). The director, however, does not meet her burden simply by proving that Smith was intoxicated and that the officer arrested him on probable cause to believe he was driving. *Hampton v. Director of Revenue*, 22 S.W.3d 217, 220 (Mo.App. 2000). "The decisive issue ... is not whether the arresting officer possessed some particular type of probable cause, but whether the person had the excessive amount of blood alcohol concentration while he or she was driving." *Collins v. Director of Revenue*, 691 S.W.2d 246, 252 (Mo. banc 1985). Thus, "where the question of who was driving is put at issue in a[ ] hearing, the [d]irector must offer proof that the person whose license is to be suspended was, in fact, the driver." *Hampton*, 22 S.W.3d at 221. Indeed, § 302.530.4 specifically provides that "[t]he sole issue at the hearing shall be whether by a preponderance of the evidence the person was driving a vehicle pursuant to the circumstances set out in section 302.505." Proof that the person was driving or operating the vehicle, therefore, is essential, but such may be established by circumstantial evidence. *Hampton*, 22 S.W.3d at 221.

■ In this case, the only issue is whether the director presented sufficient evidence that Smith was driving with a blood alcohol concentration of at least .10 percent.[5] The evidence established that Highway Patrol Corporal C.W. Watson and Linn County Sheriff's Deputy James Smith found Scott Smith lying unconscious about 30 to 40 feet from an overturned truck in a bean field near Linn County Y. The odor of intoxicants was about Scott Smith's body. Officers searched for other persons who may have been riding in the truck and found no one. They found a trail of footprints and blood from the truck to where Smith lay. Smith was registered as the truck's owner. This evidence was sufficient to establish that Smith was the vehicle's driver.

In *Heskett v. Director of Revenue*, 62 S.W.3d 103 (Mo.App.2001), this court's Southern District faced an almost identical factual situation in which police found an unconscious and injured person, Eric Heskett, across the street from an overturned motorcycle. Heskett owned the motorcycle. Officers found no other injured people in the area, and Heskett smelled of intoxicants. Heskett's blood alcohol concentration was .19 percent. The court ruled that the circumstantial evidence established the inference that Heskett was the motorcycle's driver. The *Heskett* court emphasized that Heskett did not testify or present evidence to show that he was not the driver or that another reasonable explanation existed for the circumstances. *Id.* at 106. The court noted, "Our standard of review does not permit this court to affirm the judgment of the

behalf, in the same manner and subject to the same rules as other witnesses; provided, that the party so called to testify may be examined by the opposite party, under the rules applicable to the cross-examination of witnesses." Moreover, § 536.070 says that in any contested case, "[a] party who does not testify in his own behalf may be called and examined as if under cross-examination."

5. Smith does not contend that the evidence did not establish that the arresting officer had probable cause to arrest him for driving while intoxicated.

trial court by merely disregarding all uncontradicted evidence that supports the Director's contention that all elements for an administrative revocation were met." *Id.*

■■■ The same is true in this case. Smith chose not to present evidence but to argue instead that the director's case was insufficient to prove that he was driving. During Smith's cross-examination of Watson, the trooper acknowledged the possibility that someone other than Smith may have been the driver. "While we agree that [an arrestee] may rebut [the d]irector's *prima facie* case solely through cross-examination, it is insufficient to merely point out 'inconsistencies' that do not effectively rebut a material element of [the d]irector's case." *Phelps v. Director of Revenue,* 47 S.W.3d 395, 401–02 (Mo. App.2001). If the driver does not present evidence, "cross-examination must at a minimum create a legitimate credibility dilemma with respect to a material aspect of [the d]irector's case." *Id.* at 402. Smith presented no evidence that anyone else drove his truck. Cross-examining Watson about other possibilities is not the same as offering evidence of what really happened. Smith presented no evidence that contradicted the inference that he was the driver.

Because the director presented sufficient evidence to establish that Smith was driving, Smith was obligated to go forward with evidence to rebut the director's evidence or to show some other countervailing circumstance. That he chose not to do so was fatal to his case. It left the circuit court with no option but to rule that the director had met her burden in establishing that Smith was the truck's driver.

Smith argues, however, that, even if the evidence was sufficient to establish that he was driving, the director did not establish that he was driving with a blood alcohol concentration in excess of .10 percent. The director presented evidence that Watson requested that a sample of Smith's blood be tested for the presence of alcohol after Smith was transported to Pershing Memorial Hospital in Brookfield. Zafar Ahmed, a paramedic with the Linn County Ambulance District, withdrew blood from Smith at the hospital. Tests indicated that Smith's blood alcohol concentration was .16 percent.

Smith did not rebut this evidence but challenged its admissibility on the ground that the director did not establish that Ahmed was a trained paramedic and that Ahmed withdrew the blood from Smith at the hospital and not at the ambulance district headquarters. Smith calls for a strict application of § 577.029, which says, "A licensed physician, registered nurse, or *trained* medical technician *at the place of his employment,* acting at the request and direction of the law enforcement officer, shall withdraw blood for the purpose of determining the alcohol content of the blood[.]" [6] Smith argues that, because the director did not establish that Ahmed was trained and that the sample was drawn at the wrong location, the blood test results were not admissible evidence.

■■■ Smith is correct; the director did not establish that Ahmed was a trained paramedic. Notwithstanding our ignorance of these matters, requiring that paramedics be trained in proper procedures for withdrawing blood so as to keep it from becoming tainted seems to be significant.[7] Smith, however, raises the issue for the

6. We added the emphasis.

7. Section 577.029 seems to suggest that this is the rationale for the requirement when it

mandates that blood be drawn "in strict accord with accepted medical practices."

first time on appeal. He did not object at trial to Ahmed's testimony on the ground that Ahmed was not qualified to draw blood. He did not preserve the issue for our review.

We can review the issue, therefore, only as a matter of plain error under Rule 84.13(c), which grants us the discretion to review plain errors. We decline review in this case because Smith failed to object when the director introduced into evidence the test results showing Smith's blood alcohol concentration to be .16 percent by weight. When the director offered the test results as evidence, the circuit court expressly asked Smith whether he had any objection, and Smith responded, "I guess not, Judge." At that point, Smith waived whatever issues might have been preserved regarding Ahmed's competence. Hence, our review of the competency issue as purported plain error would be purely academic, and we do not do so.

The same problem surrounds the location issue. Again, when the director offered the test results as evidence, Smith did not renew his objection that the paramedic obtained the blood sample at the hospital rather than at the ambulance garage.[8] "If evidence of a driver's [blood alcohol concentration] is admitted without objection, the driver waives any objection to this evidence[,] and it may be properly considered even if it would have been excluded upon a proper objection." *Dunker v. Director of Revenue*, 938 S.W.2d 663, 664 (Mo.App.1997). "In absence of a specific objection, the State's failure to prove compliance with even a foundational re-

quirement does not destroy the sufficiency of its case." *Todd v. Lohman*, 911 S.W.2d 321, 324 (Mo.App.1995).

Smith did object to Ahmed's testimony on the ground that Ahmed did not withdraw the blood at his place of employment. In response to the objection, the circuit court said, "Well, I'll allow him to testify subject to [Smith's] point . . . and consider that when I make my decision." This may have suggested to Smith that he had a "continuing objection" on the point. Hence, we exercise our discretion to review the matter—whether Ahmed obtained the blood sample "at his place of employment" as required by § 577.029.

Ahmed worked for the Linn County Ambulance District. Ambulance districts are empowered to serve all inhabitants of the area comprising the district. Section 190.060.1(7).[9] The entire district in which Ahmed worked, therefore, constituted his place of employment. *See Everard v. Woman's Home Companion Reading Club*, 234 Mo.App. 760, 122 S.W.2d 51, 55 (1938) (entire district which magazine salesman canvassed constituted "place of work"); *Rose v. Missouri District Telegraph Company*, 328 Mo. 1009, 43 S.W.2d 562, 568 (1931) (telephone company's telephone pole was employee's place of work). To conclude otherwise would mean that, before a paramedic could withdraw blood in compliance with an officer's request, he would have to transport the person to the ambulance district's office to draw blood— a place that we assume would not be nearly as conducive as a hospital to strict com-

---

**8.** Smith did object to "blood transmittal affidavit labeled Exhibit A." He objected, in part, because of "the issue [of] the paramedic." He did not, object, however, to Exhibit B—the blood test report.

**9.** Section 190.060.1(7) empowers the district "to extend the privileges and use of the ambu-

lance service to persons residing outside the area of the district upon such terms and conditions as the board of directors prescribes by its rules and regulations[.]" We need not address in this case, however, whether the paramedic's place of employment includes places outside of the ambulance district.

pliance with accepted medical practices. We presume that the legislature did not intend to pass an absurd law. *Abrams v. Ohio Pacific Express*, 819 S.W.2d 338, 341 (Mo. banc 1991). Thus, we conclude that, when the paramedic obtained the blood sample, he was at his place of employment, inside the Linn County Ambulance District.

Because the director established that the arresting officer had probable cause to arrest Smith for driving while intoxicated and that Smith was driving with a blood alcohol concentration of at least .10 percent, the circuit court's judgment is not supported by substantial evidence and is against the weight of the evidence. We reverse the circuit court's judgment and remand with instructions that the circuit court enter judgment upholding the suspension of Smith's driving privileges.

ROBERT G. ULRICH, Judge, and EDWIN H. SMITH, Judge, concur.